Jones *v.* Jones, Appellant.

Argued December 13, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John Francis Williams,* for appellant.

*Joseph L. Fox* and *Reuben Levi,* did not appear or file a brief for appellee.

OPINION BY DITHRICH, J., March 11, 1947:

The libel in this case charges the wife respondent with desertion. The master found as a fact that the

charge had been proven and recommended a decree. Exceptions were filed to the master's report, and after argument they were dismissed and a final decree entered. Respondent has appealed.

The parties were married March 8, 1938. Respondent gave birth to a child August 6, 1938. There is no question but that the marriage was entered into solely because of respondent's pregnancy, and, in the words of the learned president judge of the court below, "This kind of situation can cut both ways: it is just as likely that the woman would have no interest in the man beyond legitimatizing the child as it is that he would want to be rid of her after having made amends by marrying her. Libellant did not pretend to a great love for his wife but he did base his desire to go on with the marriage upon the advisability of rearing the baby in an unbroken home." After a separation of nine days shortly following the marriage, when the libellant testified his wife left him for the first time, they separated finally August 25, 1938. There being no denial of the fact that the respondent left the libellant and remained away from him for more than the statutory period of two years, the burden would be upon her to prove by competent evidence consent or a reasonable ground for her action. The court below concluded that she had failed to meet the burden thus placed upon her. We are in accord with that conclusion.

After an independent review of the entire record giving, of course, due weight to the recommendation of the master, who saw and heard the witnesses, and to the action of the court below, although we are not in any way bound by it, it is our considered opinion that the preponderance of the evidence is clearly with the libellant. Appellant contends that libellant's testimony is without corroboration and since it is contradicted by the respondent there has been created nothing more than a doubtful balance of the evidence which, of course, would not entitle libellant to a decree. But before that well established rule can be made to apply, it must appear

that libellant's testimony was not only contradicted but shaken by the respondent. Here we have a record wherein libellant's testimony is not only not shaken by the testimony of respondent but, in one or two important particulars, is actually strengthened by it.

To begin with, she attempted to conceal from her husband the fact that she had syphilis after she had been so informed by the physician to whom she went for prenatal care before being admitted to the hospital. Sexual intercourse was had between the parties only twice, once before and once after the marriage. Respondent said that following her discharge from the hospital as an out-patient (she having to return at intervals for a period of more than a year for treatments for syphilis), he suggested that she go to her mother's home to recuperate. He denied having suggested that, and there would appear to be no good reason for her leaving the home where she had lived with her husband from the date of the marriage until she left to enter the hospital. His sister and her husband and six children who had been occupants of the same house in which libellant and respondent resided and on which libellant was making payments to the Home Owners' Loan Corporation, were moving elsewhere and libellant and his wife and child would have had the place to themselves. Libellant then could have had a bedroom separate and apart from his wife. He had been sleeping downstairs since he had learned from the hospital that his wife had a communicable venereal disease. The sister and her family were not to leave the house until a certain Friday, but respondent packed up all her belongings and left on the preceding Monday while her husband was at work. She said she left because she thought that they would all have to move when the sister moved. She went to the home of her mother, where she has since resided. Libellant stayed on at the Summit Street house for five weeks and continued to make payments on it for eleven months, during most of which time it was rented. He finally gave it up when he could no longer meet the

required payments and had been repeatedly told by his wife that she would not return to live with him.

Further corroboration of libellant's testimony is found in the admission of respondent that later on when libellant was rooming at a house on DeKalb Street, she received a letter from him telling her that the people he was living with were going to give him the privilege of the whole house and ". . . we could live there, take charge of it" and, in the same breath, ". . . he never asked me to come to live with him."

"Q. Well, didn't you assume that you would live with him when he wrote you that letter?

"A. He didn't—I didn't answer his letter."

Her attorney then admonished her, "Don't try to cover everything in one breath." Still later on, in answer to a telephone call, she visited the house but thought that libellant was not serious about it.

Finally after being separated from libellant for more than two years, she sent him an abrupt note returning his pictures and asking him to send her hers. She said she took that action because she had seen a picture of another woman in his room, but she was unable to explain why she waited for more than two years after seeing the other picture, allegedly on the dresser in a room which libellant had taken in Chester, Pennsylvania, in order to be near his work. The master regarded this letter, and not without good cause, as conclusive evidence of respondent's feelings toward libellant and her intention not to return to live with him.

" 'There having been a separation for the required statutory period proved by libellant, the burden was on respondent to prove by competent evidence consent or a reasonable cause for her action': Thomas v. Thomas, 133 Pa. Superior Ct. 12, 14, 1 A.2d 686. Only such cause as would itself warrant a divorce is a reasonable cause: Rosa v. Rosa, 95 Pa. Superior Ct. 415": *Bates v. Bates,* 153 Pa. Superior Ct. 133, 136, 33 A. 2d. 281, 282, *Urbaczewski v. Urbaczewski,* 158 Pa. Superior Ct. 614, 45 A. 2d 925.

Decree affirmed.