## Rugh *v.* Rugh, Appellant.

Argued April 18, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Hackett Mullen,* for appellant.

*Paul K. McCormick,* for appellee.

OPINION BY DITHRICH, J., July 15, 1949:

The libel in this case, sworn to on October 18, 1945, charged the respondent with willful and malicious desertion from May 15, 1940. The libel was sworn to the day following libellant's return home from Indiantown Gap, Pennsylvania, where he was discharged from the Army on October 16. He entered the military service in January, 1943, and was overseas twenty-one months. On March 17, 1945, he wrote respondent from Germany. The letter reads, in part, as follows: "March 17 Germany Dearest Ann Recd your v. mail letter glad to hear from you again. . . . you won't have to answer my question. I was going to wait till I came back and tell you so I will say it now, all I want is a divorce as I know now that you and I could never make a go of things again tho we can be friends for the children's sake—this should not be a surprise to you. You might as well give it to me as I will get it any way . . . That is if I get back and I hope to so don't get mad as the way I see things you and I are happy away from one another so my dear I hope to hear from you real soon if you are

going to give me it or not. Yes, Ann, we men do get around over here. . . . So my dear I hope this letter finds you well and in good health. . . . Closing with loads of luck and a big kiss for you. Always Jim. It's the best don't you think, I mean about the divorce."

Although he returned home October 17, 1945, it was not until October 23 that he went to Whitney, Pennsylvania, not far from his mother's home in Latrobe, where he was staying, to see his wife and two children, Jane Marlene and Elaine Ann, aged, respectively, twelve and nine years at the time of hearing. The couple was married September 20, 1930, in Cumberland, Maryland. His call·upon his wife and children was five days after he had made affidavit to his libel in divorce and the same day that it was presented in open court and a subpoena awarded. It was filed the following day.

Notwithstanding these record facts the master, who recommended that the decree be granted, stated in his report that "During the time the libellant was in the military service he sought a reconciliation by means of written communications, and after he returned from military service he sought a reconciliation in person with the respondent but she refused to come back to him." In the only "written communication[s]" while libellant was in the service, so far as the record discloses, he not only was not seeking a reconciliation but was seeking and asking for a divorce. And instead of seeking a reconciliation after he returned from the service, the first thing he did was to start divorce proceedings. There is some intimation that the lapse of five days between the preparation of the libel and its presentation in court was for the purpose of affording libellant an opportunity to seek a reconciliation. But if such an attempt was made, and it is denied by respondent, we are convinced that it was not made in good faith.

As a further indication of what appears to have been a rather confused state of mind on the part of the master, he stated in his report that "on or about the 15th day of May, 1940, he [libellant] returned from the *army* and found the respondent and his two children gone." (Italics supplied.) The fact is that libellant did not enter the Army until 1943 and did not return home until 1945. He did testify that when he returned home from *work* on May 15, 1940, he found his wife had taken the children's clothing and most of her own and gone to the home of her parents.

Respondent denied that she had deserted libellant on that date, or on any other date. Her testimony is that in the evening of May 31, 1940, after she had finished her housework and with the knowledge and consent of her husband, she went with the children to her parents' home, where they spent the night. She was to be a bridesmaid at her brother's wedding at nine o'clock the following morning at Derry, Pennsylvania, and said she could not trust her husband to look after the children. That was why she took them to her mother. Following the wedding she returned to her home early in the afternoon of June 1. Libellant admittedly did not return home from work that day and never lived or cohabited with the respondent thereafter. On the contrary he quit his job with the Latrobe Electric Steel Company June 1 and went to Welch, West Virginia, where he stayed for about two and one-half months. Respondent stayed on in the house at 311 Spring Street, Latrobe, until June 27, when, having no money with which to pay rent or buy groceries, she took the children and went to live with her parents.

Ten days before that she made an information charging libellant with desertion and nonsupport, but the warrant was not served until October 2, when he returned from West Virginia. He was committed to the Westmoreland County Jail, where he was confined until

October 31, when he was discharged under the Insolvent Prisoners Act. In the meantime, on October 15, he had secured respondent's consent to a "nolle pros" of the charge on condition that he "quit drinking and secure employment and support his wife and children." Up to June 15, 1942, more than two years after the separation, he had contributed only $160 toward the support of his wife and children. On that date a second information was made, resulting in a court order for $50 a month, $25 of which was to be applied on arrearages. By September 9 the arrearages amounted to $845 and a bench warrant was issued for his arrest, but he could not be located. The sheriff's return stated that "Defendent left state." Thereafter respondent received no support for herself or children until after libellant had entered the Army, when she received a monthly allotment. She testified that she did not know where her husband was from June to October, 1940, and from June 15, 1942, until he entered the Army in January of 1943.

Exceptions to the master's report were argued before President Judge LAIRD and Judge McWHERTER. They being unable to agree, the exceptions were reargued before the full court sitting en banc, Judge BAUER being the third judge. He joined with Judge McWHERTER in dismissing the exceptions and granting a decree. President Judge LAIRD dissented but did not file an opinion.

In the closing paragraph of its opinion the lower court said: ". . . the husband claims and his contention was believed by the Master, that he made repeated efforts to effect a reconciliation but that the wife made none." But as this Court said in *Langeland v. Langeland*, 108 Pa. Superior Ct. 375, 379, 380, 164 A. 816: "The question in a divorce case is not whether there was evidence to support the findings of the master; it is the

duty of the court to make its own independent and careful investigation of the evidence to ascertain whether it does in truth establish a legal cause for divorce. . . . True, the master's report is entitled to the fullest consideration because of his personal contact with the witnesses, but it does not come into court with any preponderating weight or authority which must be overcome by the opposing party." See, also, *Helon v. Helon,* 157 Pa. Superior Ct. 587, 43 A. 2d 398; *Stinson v. Stinson,* 163 Pa. Superior Ct. 497, 63 A. 2d 413.

Upon such independent review as we are required to make, we conclude that the decree cannot be sustained. As we read the testimony there was no obligation on her part to effect a reconcilation, and whatever overtures were made to her by libellant were not made in good faith. The letter written to her from Germany and the conduct of libellant immediately following his discharge from military service conclusively prove that he was set upon obtaining a divorce regardless of her wishes in the matter, as indicated by his stating to her that "You might as well give it to me as I will get it any way."

The master further said that "the respondent did not by credible testimony show such acts of cruel and barbarous treatment . . . as would justify the granting of a divorce to her on that ground." That would be a pertinent observation had respondent admitted leaving libellant and had she attempted to justify her leaving on that ground. *Jones v. Jones,* 160 Pa. Superior Ct. 358, 51 A. 2d 521; *Bates v. Bates,* 153 Pa. Superior Ct. 133, 33 A. 2d 281. But in her answer she denied that she had left libellant and, on the contrary, averred that he had left her, a position consistently maintained by her throughout and, in our opinion, established by the fair weight of the credible testimony.

The decree is reversed and the libel dismissed.