**Danna *v.* Danna, Appellant.**

130

Argued April 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John D. Ray,* with him *Franklin Blackstone, Jr.,* for appellant.

*James B. Ceris,* for appellee.

OPINION BY ERVIN, J., September 11, 1958:

This is an action for a divorce a.v.m. brought by a husband against his wife on the ground of desertion in which the master recommended that the divorce be granted. Exceptions to his report were dismissed and

a decree in divorce was entered by the court below from which the wife took this appeal.

The parties were married on September 26, 1940 and resided together until December 5, 1950, when the wife left the common abode, taking with her the two children born of the marriage. The complaint in divorce was filed on November 29, 1955. The testimony is undisputed that on December 5, 1950 the plaintiff-husband left for a hunting trip and that he returned on Wednesday, December 8, at night, found the house dark and on entering the home found that all the furniture had been removed except one bed, a chair and some rugs. The next afternoon he found that his wife was occupying two rooms in a house located to the rear, to which the wife had moved a portion of the furniture and the rest of the furniture she placed in storage. The wife had not told the husband of her intention to leave nor had there been any trouble between the parties for several weeks prior thereto. Sometime later the defendant-wife and her children moved back into the home under previous arrangements made whereby the husband, on the same date, withdrew from said home to make way for his wife and children. The home was owned by both parties as tenants by the entireties and was fully paid for. When the wife moved back into the home she moved the stored furniture back into the house. The defendant and her children continued to reside in the home and the husband continued to reside with his mother, where he went to live when he removed from said home. The husband on two occasions after he located his wife following his return from the hunting trip, requested her to return to live with him but she refused to do so. The parties have remained separated from each other since that time.

There having been admittedly a separation for the required statutory period, the burden was on the wife

to prove consent or a reasonable cause for her withdrawing from the matrimonial domicile: *Dougherty v. Dougherty*, 166 Pa. Superior Ct. 219, 70 A. 2d 411.

The wife does not contend that the separation was consentable but argues that she had reasonable cause for leaving. The "reasonable cause" which is justification for one spouse leaving the other, is that which would entitle the separating party to a divorce: *Boughter v. Boughter*, 164 Pa. Superior Ct. 574, 67 A. 2d 812.

The wife claims that the husband did not show affection for her. The husband denied this, saying that when he went to kiss his wife, she would turn away from him. She admitted that she kept moving out of the common bedroom. She and three neighbors testified that the husband would come home from work, have his dinner, change his clothes and then go out for the evening. The husband testified that he was engaged in the busines of a beer distributor and that this necessitated the spending of time at his place of business during the day and also required that he would meet with his customers during the evening as the business was a highly competitive one. He also testified that he held an office in the Association of Beer Distributors and that this necessitated his attending meetings of the group. He also testified that he was active in the American Legion, commander of his Legion post and interested in the activities of the drum and bugle corps sponsored by his post. No testimony was presented by the wife to contradict this testimony of the husband. On several occasions when the wife called the husband at places where he said he would be attending meetings, she was able to locate him at those meetings. A reading of this entire record convinces us that this husband was a hard worker and gave his business a great amount of his time and attention. He arose

early in the morning and worked at his business throughout the day and most of the evenings. While it might have been better if he could have devoted more of his time to his family, we are not inclined to criticize him too severely for giving close attention to his business. Surely this course of action on his part did not constitute an indignity.

The wife also complained that the husband did not take her and the children out for rides and other pleasures as often as she would like to have gone. His failure in this connection can be excused because of his extreme devotion to his business.

The defendant also accused her husband of associating with other women and in particular a Betty Glatz who was an employe in the beer distributing business of the husband. She did not produce any evidence at all to show that the husband ever took Miss Glatz out or, in fact, that he spent any time with her at all except at his business. The plaintiff himself denied that he was carrying on any affair with Betty Glatz and it does seem to us that if he had been doing so for the period of time complained of, some evidence could have been produced to substantiate the wife's suspicions. She did produce some clothing of her husband which she alleged bore lipstick marks. He denied any connection with these alleged lipstick marks. She also alleged that he made complaints with regard to the meals. He answered by saying that he merely was endeavoring to have his wife economize when his business was bad and that he objected to several items of food which he did not like. There was testimony that on one occasion he had thrown some food from the table to the floor. He denied this and explained it by saying that he had attempted to get a fork from a drawer and that the drawer and the contents fell to the floor.

The wife also complained that the husband did not properly support her and the children but he produced receipts to show many purchases at various stores and his own son, who was testifying for the wife, admitted that the father did provide sufficient food and clothing. She also complained that the telephone service and newspaper service had been cut off but again the husband was able to produce receipts which showed that this was not true. She also complained that he did not make sufficient repairs to the home and again he was able to produce receipts to deny this charge.

No testimony was produced to show that the husband ever found fault with his wife or in any way belittled her in the presence of other people.

The wife also produced evidence to the effect that she had become nervous and claimed that her condition was caused by the husband's conduct. No medical testimony was produced to substantiate this charge.

We have carefully read all of the testimony in this case and are convinced that there was not a sufficient course of conduct proved by the wife to entitle her to a divorce for indignities. This was not a happy marriage, as the record plainly indicates, but this would not warrant a decree in favor of the wife had she instituted a suit for divorce on the ground of indignities: *Seery v. Seery*, 183 Pa. Superior Ct. 322, 329, 131 A. 2d 845.

While the recommendations of the master in a divorce case are advisory only and not controlling on the court below or on us, they should not be lightly disregarded: *Sobotowich v. Sobotowich*, 165 Pa. Superior Ct. 60, 67 A. 2d 637.

Our independent review of the evidence convinces us that the master and the court below properly appraised the evidence and arrived at a proper conclusion.

Decree affirmed.