Atene, Appellant, *v.* Lawrence.

Argued November 24, 1967. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Fred Lowenschuss,* with him *William M. Labkoff,* and *Snyder & Lowenschuss,* for appellant.

*William B. Freilich,* with him *Joseph G. Manta, James M. Marsh,* and *LaBrum and Doak,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1968:

On July 17, 1961, the plaintiff Angelo P. Atene was injured when the car which he was driving came into collision with a car being operated by the defendant Paul A. Lawrence, in which nine passengers were riding, four in the front seat.

In the lawsuit which followed, a verdict was returned in favor of the defendant. The plaintiff has appealed for a new trial, urging trial errors.

Section 1001 of The Vehicle Code, provides, inter alia: "Reckless driving is unlawful, and for the purpose of this act, is construed to include the following: (1) Any person who drives any vehicle or streetcar or trackless trolley omnibus upon a highway carelessly disregarding the rights or safety of others, or in a manner so as to endanger any person or property. (2) If investigation into an accident arising from the use and operation of a motor vehicle discloses that the accident occurred due to the front seat of the motor vehicle having been occupied by more than three (3) persons. . ." (75 P.S. §1001)

At the trial, plaintiff's counsel asked the Court to charge the jury on §1001, in so far as it applied to the facts in the case. The judge held that since one of the four persons in the front seat was a two-year-old child, the indicated provision of the Code did not apply, and, therefore, refused to charge on the subject. The learned judge was in error.

The statute does not state that four persons must anatomically be seated on the forward cushion. Under

the judge's interpretation, if two persons were riding monkey fashion on the shoulders of two other passengers in the front seat, the statute would be uncontrolling, which interpretation, of course, would be wholly erroneous because the danger resulting from four persons so pretzelled on the front seat would be obvious.

In addition, the statute does not say that the persons in the front seat must be adults, nor that they must be sitting latitudinously one next to the other. It could well be that the peril resulting from persons wedged side by side in the front seat would be less than the peril resulting from a passenger holding a two-year-old child in his lap. An infant requires considerable attention, especially when riding in the forward part of a rapidly-moving vehicle. An impetuous stretching out of the arms, a squirming impatience, an impetuous clutching of the driver's ear, or a nerve-piercing squall could unnerve a driver or so confuse him that the wheel could momentarily slip away from his control.

On the day of the accident, the traveling family in the defendant's car traveled 90 miles from New Jersey to the Philadelphia Zoo where they watched the animals cavorting, playing, bellowing, charging, shrieking, baying and doing all the things caged animals do. A two-year-old child, returning to its home, after so extraordinary an adventure might well be fidgety and excited and require supervisory care from others, and, if one who is guiding the car, or others close to the guiding mechanism, must offer that care, it might well interfere with control of the car.

Whether the accident in this case was in any way attributable to the fact that four human beings occupied the front seat of the automobile became a question of fact for the jury to determine. In the case of *McClelland v. Copeland,* 355 Pa. 405, 410, the trial court,

in a situation of four persons occupying a front seat, committed to the jury the question of determining " 'whether the evidence discloses that the accident occurred due to the front seat of the motor vehicle being occupied by more than three persons. . . . Did that contribute to the accident, the fact that there were more than three people on the front seat of the motor vehicle?' " Our Court held that such a charge was "unexceptionable."*

The language of the statute is clear that the mere presence of four persons in the front seat does not of itself constitute negligence per se. *Henry v. Pennsylvania R.R. Co.*, 368 Pa. 596. But where there can be any reasonable inference or conclusion that quadruple front-seat-riding played an integral part in the happening of the accident, the question as to its causal connection with the tortious event must be submitted to the jury.

During the trial, plaintiff's counsel put the following question to a police officer: "Would it have made any difference to you if there were four people in the front of that car?"

In sustaining the objection made by defendant's counsel to this question, the court ruled: "It does not make any difference." But it *could* make a difference and the lower court apparently appreciated that fact when, in its opinion, denying a new trial it said: ". . . Oviously, the statute contemplates as a prerequisite to a finding of 'reckless driving' a causal connection between the number of persons (more than three) occupying the front seat of a motor vehicle and an accident involving the vehicle. . ."

---

* In the *McClelland* case the four persons in question were riding in the plaintiff's car and it was argued that this constituted contributory negligence. The Court held the question was for the jury.

During the voir dire, plaintiff's counsel sought to ask prospective jurors: "Are any members of your family or friends in the business of investigating claims?" The court excluded the question. It is reasonable to suppose that if a juror had a brother, sister, or other immediate relative working as an investigator of claims, he or she might, in time, through much conversation with the investigator, acquire an antipathy toward claimants if the investigator related episodes of fraudulent claims. This could work a prejudice against a plaintiff's case. In defending the exclusion of the question, defendant's counsel argued that prospective jurors could infer from the question the defendant was insured. But this argument is far-fetched because there can be investigation without insurance.

In the case of *Clay v. Western Md. R.R.*, 221 Pa. 439, 445 this Court held that the trial judge did not abuse his discretion in declining to permit plaintiff's counsel to ask whether any of the jurors were employees or stockholders of the Reading Railroad Co. It did, however, say: "In this connection, it may be remarked, that the better practice is to allow a general inquiry as to the direct or even contingent interest of jurors, in the result of the litigation, or in the parties to it, when there appears to be any reasonable ground to believe that some of them may have a possible interest in the result of the litigation, or in the parties, in order that an impartial jury may be selected, free from bias or interest."

Judge FREEDMAN, in the case of *Kiernan v. Van Schaik*, 347 F. 2d 775, said that the jurors are often unaware of their disqualifications. Litigants, therefore, he expatiated "have the right, at the least, to some surface information regarding the prospective jurors. Such information may uncover ground for challenge for cause. If it does not, it will be available in the

intelligent use of the peremptory challenge, which is the antithesis of challenge for cause. . . A juror's identification with the business of investigating and paying damage claims affects his impartiality as significantly as does a juror's employment by a lawyer who is a specialist in prosecuting such claims."

Although the general query of plaintiff's counsel was proper, its scope was too broad. A family, no matter how large, is bound to be confined to a consanguineal, in-law circle, but "friends" is an elastic term and, when its limits are left to the judgment or imagination of the interrogated person, it could include the merest acquaintances or even persons known only through newspaper, television or radio media. If the question is put at the next trial, it must be limited to relatives.

The plaintiff complained further that the judge erred in telling the jury that it could find that the thoroughfare on which the defendant was traveling was not a street, but rather a driveway or a mall. Also, that the court erred in referring to a Superior Court case. These alleged errors, considered singly or together, would not have been enough to require a new trial. In the retrial, the court will be guided by the evidence.

At the trial, the defendant introduced hospital records of the plaintiff which predated the current accident by 11 years and denied the plaintiff an opportunity to cross-examine on the records. The cross-examination should have been permitted.

During his summation, defendant's counsel argued that the plaintiff's counsel had objected to his showing the jury certain exhibits, when, in fact, there had been no such objection. We find no reversible error in the court's disposition of the plaintiff's complaint in this respect.

Plaintiff's counsel, in his argument to the jury, used the phrase "incontrovertible facts", not, as the announcement of a legal doctrine, but as a means of describing a physical situation. The trial court ruled he could not use the phrase. This was an unwarranted interference with the lawyer's right to speak as he wished. Jurors are not lawyers and would not know "incontrovertible facts" as a phrase of art. An attorney, pleading his client's cause, may employ whatever language he believes will best advance his case and if he brings into play a stock legal phrase which in itself is descriptive in its own lexicographical right it should not be ruled out of bounds simply because to a judge or lawyer it might have a specific legalistic meaning. For instance, it would be wrong to instruct a lawyer that he could not say in a civil case that in his belief a certain fact has been proved "beyond a reasonable doubt."

Finally, the plaintiff argues that the judge's charge placed undue emphasis on the defendant's case as against the plaintiff's case. We find no merit in this complaint.

Judgment reversed, with a venire facias de novo.

Mr. Justice Jones, Mr. Justice Eagen, Mr. Justice O'Brien and Mr. Justice Roberts concur in the result.

Mr. Chief Justice Bell and Mr. Justice Cohen dissent.