## Rushe v. O'Malley

James Weisman, for plaintiff.
Wilbur McCoy Otto, for defendant.

DOYLE, J., November 16, 1971.—Harold Rushe, plaintiff, fell down a stairway in his home on November 5, 1960, as a result of which he dislocated the second cunieform bone of his right foot. Dr. Francis J. O'Malley, defendant, hospitalized plaintiff and performed a surgical operation on plaintiff's foot on the day of the accident and, five days later, performed a second operation on that foot. Defendant continued to treat plaintiff at his medical office after plaintiff's release from the hospital on November 12, 1960. Plaintiff contends that defendant improperly treated the injury, which alleged improper treatment caused further injury to plaintiff and required plaintiff to undergo additional surgical operations, hospitalizations and treatments by other physicians until the time of trial, November 30, 1970, almost 10 years after the accident occurred. For the resultant losses, plaintiff sued defend-

ant in this trespass action which was tried before a jury for five days, terminating in a jury verdict in favor of defendant on December 4, 1970. Plaintiff timely filed his motion for a new trial, which was argued on June 22, 1971, with brief submitted on October 18, 1971, and is now before us for consideration.

At a pretrial conference held two months prior to trial, defense counsel advised plaintiff's counsel of defendant's poor health and of the consequent possible necessity of deposing defendant at a deposition which would be videotaped for use at trial. Defendant was suffering from a serious heart ailment and also from cancer. On October 22, 1970, the deposition of defendant was taken and recorded on sound-accompanied videotape and also recorded by routine stenographic procedures. The deposition included the use of an x-ray view shadow box and the viewing and analysis of x-ray pictures. Plaintiff's counsel was present and cross-examined defendant at the deposition.

Prior to the commencement of defendant's deposition, plaintiff's counsel handed to defense counsel a subpoena requiring the appearance of defendant at trial. On October 30, 1970, defendant moved to quash the subpoena and attached to his petition a report from one Dr. Brethauer, which recommended that his patient, the defendant, avoid activities that cause considerable tension, including defendant's appearing as a witness at a trial.

The pretrial court did not quash the subpoena but, in view of defendant's poor health and the availability of the videotape deposition, suggested that if defendant was called by plaintiff to testify, plaintiff's counsel should confine his examination to those matters not covered at the deposition, and to certain crucial matters that plaintiff's counsel desired to emphasize, if these purposes could be accomplished without requir-

ing an extended appearance by defendant on the witness stand. At the pretrial conference, defense counsel offered to call Dr. Brethauer for preliminary examination, out of hearing of the jury. Plaintiff's counsel did not request such a hearing.

On December 3, 1970, defendant appeared in court in response to plaintiff's subpoena and testified for 20 minutes. On December 4, 1970, defense counsel offered to present the sound-accompanied videotape deposition of defendant. Plaintiff's counsel objected generally to the presentation and specifically to certain portions of the videotape deposition. Both the audio and visual portions of the matters objected to were deleted prior to the deposition being shown to the jury. The court permitted the videotape deposition of defendant to be presented to the jury through standard television receivers: one for the jury, one for the court and one for the parties, counsel and spectators.

Prior to the jury's deliberation, the following special interrogatories were agreed upon for submission to and were submitted to the jury:

"1. Defendant, Francis J. O'Malley, was professionally negligent, or practiced medical malpractice in the treatment of plaintiff, Harold Rushe, in this case. Yes or No.

"2. The professional negligence or medical malpractice of defendant doctor was the proximate cause of, and resulted in the injuries and damages complained of by plaintiff in this case. Yes or No."

The jury answered "No" to both questions and rendered its verdict for defendant.

Primarily at issue is whether the court committed reversible error in permitting the introduction into evidence of the sound-accompanied videotape deposition of defendant.

Pennsylvania Rule of Civil Procedure 4020, "Use of Depositions at Trial," provides that:

"(a) At the trial, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any of the following provisions: . . .

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose *if the court finds* . . . (c) that the *witness is unable to attend or testify* because of age, *sickness, infirmity* or imprisonment; . . ."

In pari materia, Fed. Rules of Civil Procedure 30(b), "Depositions Upon Oral Examination," provides that:

". . . (4) The Court may upon motion order the testimony at a deposition be recorded by other than *stenographic means,* in which event the order shall designate the manner of recording, preserving and filing the deposition, and may include other provisions to assure that the recorded testimony will be *accurate* and *trustworthy.* If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense."

Paramore v. State, 229 So. 2d 855 (Fla. 1969), held that a videotape of defendant's confession was admissible, analogizing the admissibility of photographs and motion pictures to videotapes. Motion pictures, without sound, have long been considered admissible. See 8 Am. Jur., Proof of Facts §167 (1960). Sound recordings without pictures are admissible into evidence. See, e.g., Paulson v. Scott, 260 Wis. 141, 50 N.W. 2d 376 (1951), and Comment, "Requisites of Admissibility of Sound Recordings," 18 Okla. L. Rev. 87 (1965). Cf., the interim report by the Administrative Office

of the Illinois Courts to the Supreme Court of Illinois strongly recommending more experimental videotaping of entire trials as an accurate and inexpensive means of preserving the record. See Madden, "Interim Report to the Supreme Court of Illinois — Experimental Video Taping of Court Room Proceedings (1968); Madden, "Illinois Pioneers Videotaping of Trials, 55 A.B.A.J. 457 (1969); and Morrell, "Enter— The Video Tape Trial," 570 Ins. L.J. 406 (1970).

The court did not abuse its discretion in finding that defendant was not available in a legal sense under Pa. R.C.P. 4020. The court permitted defendant to be called by plaintiff to testify as for cross-examination at the trial and defendant testified for 20 minutes. However, based on the report and recommendation of defendant's physician and the court's observation of defendant's physical condition at trial, the court found that defendant's health would be unduly hazarded if he testified further and held that defendant was unable to testify because of "sickness or infirmity" and that defendant's videotape deposition was admissible in his own defense.

The Pennsylvania Rules of Civil Procedure do not exclude, eo nomine, the use of videotaping procedures in recording depositions or in using that type of recording at trial. Federal Rule of Civil Procedure 30 authorizes ". . . other than stenographic means . . ." for recording depositions as long as accuracy and trustworthiness of the recorded testimony is assured. Courts avail themselves, and thereby aid litigants and lawyers, of all appropriate techniques for the purpose of ascertaining facts and accelerating pretrials and trials. Motion pictures sans sound recordings are admissible; sound recordings sans motion pictures are admissible. Videotape, which combines sound and motion pictures, is even more accurate and trust-

worthy and, therefore, of great value to triers of fact. A videotape deposition appears to be the closest facsimile to having the witness physically present in front of the jury. The videotape reproduces accurately the testimony of a witness and enables the jury to assess the demeanor, voice inflections, body movements, facial expressions, as well as the words of the witness and examiners. The jurors may assess the credibility of the videotape witness by observing his gestures, grimaces, apprehensions and sincerity and aurally perceive his tone and inflection.

Although the videotapes were not filed with the court, they were fully safeguarded. They were non-erasable and were retained by the producing company and available to all parties for examination or viewing prior to trial. Furthermore, a stenographic record was made simultaneously with the videotape and transcribed copies were provided to all counsel. In addition to the obvious improvement of the substance of what is contained in the deposition through the use of videotape, economic advantages may be gained from their use by trial courts. Availability of expert witnesses need no longer have a negative impact on the orderly and timely progress of trials and administration of trial courts.

Plaintiff contends that because videotape is innovative and because the court informed the jurors that they were viewing a judicial "first" in Pennsylvania, prejudicial and undue emphasis was placed on the testimony of defendant. We do not believe either of these factors constitutes error, much less reversible error. Motion picture and television presentations are within the common knowledge and daily experience of virtually all of our jurors. Videotape essentially presents live testimony of the witness. The jury observed defendant as he testified for 20 minutes earlier

in the trial and was able to compare that testimony with his videotaped testimony. Finally, the court *specifically instructed* the jury that the manner of presenting the deposition was not to be treated as either emphasizing or deemphasizing the testimony presented.*

The court did not materially prejudice plaintiff's case by its charge to the jury regarding contributory negligence of plaintiff. The jurors did not even reach the issue of plaintiff's alleged contributory negligence because they found that defendant was not negligent. Thus, no prejudice could have resulted from that portion of the charge.

Plaintiff further complains that the court erred in denying his motion to withdraw a juror after front page articles appeared in the "Pittsburgh Post Gazette" and the "Pittsburgh Press," two metropolitan newspapers widely circulated in the Pittsburgh area. While these articles may have been seen and read by the jurors, there is no way in which a court can deny the right of a newspaper publisher to print articles of interest to his readers. Although the videotaped method of introducing testimony is the first time the technique has been used in court, according to an article in the "New York Times,"** the publication of such fact can hardly be deemed prejudicial unless the reporting of all trials is to be judicially interdicted. We hold that the newspaper publication was not prejudicial to plaintiff.

The court charged the jury that, absent expert medical testimony, plaintiff could not prove that de-

---

* Pennsylvania Rule of Civil Procedure §4017.1 permitting videotape depositions in Pennsylvania, adopted by the Supreme Court on March 28, 1973, effective April 1, 1973.

** Their survey information was included in a story published in the New York Times on December 5, 1970.

fendant physician was negligent. The law is clear on this point. See Carl et al. v. Matzko, 213 Pa. Superior Ct. 446 (1968), citing Robinson v. Wirts, 387 Pa. 291, 297 (1956), which holds that:

"(in) malpractice cases involving an appraisal of the propriety and skill of a doctor or surgeon in his professional treatment of a patient, a lay jury would presumably lack the necessary knowledge and experience to render a just and proper decision, they must be guided by the testimony of witnesses having special or expert qualifications. The only exception to this otherwise invariable rule is in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons, as, for example, where a gauze pad is left in the body of a patient following an operation . . ."

Plaintiff complains of the charge relating to contributory negligence of plaintiff in failing to follow medical advice prescribed by treating physicians and further complains of the court's refusal to charge the jury relative to willful alteration of hospital records, seeming to forget that he produced the hospital records and introduced them into evidence. These records showed that plaintiff had failed to follow prescribed medical advice. Plaintiff's reticence may have contributed to the damage of which he complains and a jury could so find. A physician sued for medical malpractice may defend the action by introducing evidence to show that plaintiff failed to follow the physician's advice and that such failure contributed to the damage of which plaintiff complains. Neither of the objections to the charge supports a motion for a new trial in the circumstances of this case. Plaintiff's point relating to an assault and battery charge with regard to the removing

of a wire device from plaintiff's foot without his consent is frivolous and is not grounds for a new trial.

Plaintiff next complains that defendant should not have been permitted to cross-examine certain physicians regarding certain items in hospital records which the plaintiff, himself, introduced. Plaintiff's theory is that the cross-examination related to matters res inter alios acta and matters which were beyond scope of proper cross-examination. The scope of cross-examination of a nonparty is peculiarly within the discretion of the trial court, and where the witness is an expert, the permissible field of cross-examination is considerably broader, because of the permissible inference rule, than where a nonexpert witness is testifying, particularly when the cross-examiner was interrogating these physician-witnesses relative to hospital records which had previously been introduced by the plaintiff. See Atene v. Lawrence, 428 Pa. 424, 429 (1968). Under these circumstances plaintiff will not be heard to assert that the door which he opened was thereafter opened a bit wider by cross-examining counsel. Plaintiff complains that the hospital records should not have been given to the jurors for consideration during their deliberations. However the point was not briefed and is deemed to have been abandoned.

For all of the above reasons plaintiff's motion for a new trial must be denied. An appropriate order will be entered.

## ORDER

And now, November 16, 1971, plaintiff's motion for a new trial is denied; judgment to be entered on the docket in favor of defendant upon payment of the verdict fee.