Miller, Appellant, *v.* Pittsburgh Coal Company.

Argued October 5, 1937.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Vernon Hazzard,* for appellant.

*Daniel H. Gibson,* with him *Rose & Eichenauer,* for appellee.

OPINION BY KELLER, P. J., November 10, 1937:

In this workmen's compensation case, after various proceedings not necessary to be referred to here, the referee and the board, respectively, decided the controlling question of fact against the claimant, and found that her husband's death from a coronary occlusion on November 6, 1931 was not caused by, nor related to, the accidental injury to several toes of his left foot which he suffered, while in the course of his employment, on August 31, 1931, nor their resultant amputation on September 18, 1931. There was competent evidence to sustain a finding that the coronary occlusion which caused his death resulted from a degenerative heart

disease from which he suffered,—arterio sclerosis of coronary arteries. Both the autopsy record, introduced in evidence by the claimant, and the evidence of Dr. Kuehner, who attended the injured employee in the hospital, showed that the amputation of the toes, forty-seven days before his death, had healed without infection or inflammation.

The claimant's only exception to the order of the board, on appeal to the court of common pleas, was to the statement or conclusion of the board that certain records—especially the Mercy Hospital records of the deceased employee's case—which had been used by Dr. Fetter, the impartial cardiac specialist, appointed by direction of the board, in reporting on the matter submitted to him, "were properly in evidence and could be used by the witness in arriving at an opinion."

The Mercy Hospital record was offered in evidence at the first meeting before the referee by the attorney who then represented the claimant, and it was then agreed that a copy furnished by the superintendent of the hospital should be sent to the referee in lieu of the original record. It is true that at the next meeting the present counsel for claimant objected to the introduction of the hospital records and sought to "withdraw the offer to introduce them on behalf of the claimant *in so far as they attempt to give hearsay evidence,* for example, the copy of the file which I have goes into great detail as to the past history of the deceased and admissions given by the patient which are contrary to his history as we understand it" (italics supplied); but the record was not excluded.

The Act of June 26, 1919, P. L. 642, amending the Workmen's Compensation Act of 1915, P. L. 736, in section 6, page 664, provides: "The records kept by a hospital of the medical or surgical treatment given to an employe in such hospital shall be admissible as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such mat-

ters." To this extent all such records are made admissible in workmen's compensation cases. See *Marks' Appeal,* 121 Pa. Superior Ct. 181, 191, 183 A. 432.

Most of the hospital record received in evidence was clearly admissible under this statute. The notation specially objected to by appellant's counsel on the argument of this appeal, "Injury had nothing to do whatever in aggravating or inducing this condition," should not have been received or considered, for it smacked too much of a defense to an anticipated compensation claim, and, in consequence, was lacking in the second requirement for the admission generally of hospital records, referred to by the present Chief Justice in *Paxos v. Jarka Corporation,* 314 Pa. 148, 153, 171 A. 468. But this did the claimant no harm, for Dr. Kuehner, who was responsible for the note and had dictated it to the interne who made the record, appeared as a witness at the hearing and gave the same opinion in more detail, stating the reasons for his conclusion, and his evidence was unquestionably competent and for the consideration of the impartial expert. So, too, the history of the patient respecting his illness in February 1931 and his admissions with reference thereto, as recited in the hospital record, even if not receivable, as to which we express no opinion, were cured or supplied by the testimony at the hearing of the physicians who attended Miller during his illness in February 1931, and gave evidence of the serious heart attack which he had at that time.

There was ample competent evidence in the case to sustain the report of the cardiac expert called by the referee, viz., "There is only one way in which an embolus from the foot would cause coronary occlusion, and that is by the embolus passing through a patent foramen ovale, which is a congenital heart condition. This patient, according to the autopsy record, [which was offered in evidence by the claimant], did not have a patent foramen ovale. Therefore it would be impossible

for him to have a coronary occlusion the result of embolism from his foot." Doctor Perman, who performed the autopsy, and Dr. Kuehner, who was present at the time, both testified positively as to the absence of the *congenital* heart condition which, if present, might have permitted an embolus from the injured foot to cause the coronary occlusion.

We may add that the hypothetical question propounded to the claimant's medical witnesses, who had not seen or treated Miller, and who testified that in their opinion the coronary occlusion from which Miller admittedly died was contributed to by the injury to his foot, assumed matters which had not been proved by competent testimony and should not have been allowed in that form. With these excluded there was no competent evidence in the case of a causal connection between the employee's injury and his death.

The judgment is affirmed.

Judge BALDRIGE took no part in the consideration or decision of this case.