Haas, Appellant, *v.* Kasnot.

Argued March 31, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*C. J. Tannehill*, with him *Harry V. Bair*, for appellants.

*James J. Burns, Jr.*, with him *Tom P. Monteverde*, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 24, 1954:

This is the second time that these cases have been appealed to this court by the plaintiffs. On the first appeal, reported in 371 Pa. 580, 92 A.2d 171, we held that legally inadmissible testimony had been introduced at the trial; therefore we reversed the judgments that had been entered on the jury's verdicts for defendant and granted plaintiffs a new trial. The jury has now again found a verdict in defendant's favor.

Plaintiffs' present complaints, which relate principally to alleged errors of commission and omission in the trial judge's charge to the jury, could all be properly disposed of by calling attention to the fact that at the conclusion of the charge the court asked counsel whether either of them had any "suggestions or additions, corrections or amplifications," to which counsel for plaintiffs responded merely by requesting the court to make some additional statement in regard to a matter not now in question and taking a general exception to the charge. Such an exception, of course, reaches only to basic and fundamental error (*Wadatz, Admrx. v. Taormina,* 356 Pa. 481, 486, 52 A. 2d 220, 222, 223) and the alleged errors of which plaintiffs now complain do not come within that category. However, we shall briefly discuss their contentions in regard to them.

The factual issue at the second trial was the same as at the first. Anthony Cihal, Jr., with Raymond N. Haas and Edward Reiter as passengers, was driving his father's car in a westerly direction on the right-hand side of West Carson Street in Pittsburgh between the northerly street-car track and the curbstone. Andrew Kasnot was operating his car in the opposite or easterly direction straddling the southerly rail of the southerly street-car track. Veering suddenly over to the northerly side of the street he came

head-on into the Cihal car. Cihal, Jr. and Haas, who were both injured, and Cihal, Sr., the owner of the car, brought suit for damages against Kasnot. The defendant claimed that one Louis Mike, who had been driving a car on the northerly side of the street ahead of the Cihal car, pulled out to his left in order to pass a truck ahead of him, and, in so doing, either swung too far over, or skidded, into the southerly side of the street, struck defendant's car in the left rear and thereby caused it to swerve across the street and into collision with the Cihal car. Defendant therefore contended that the accident was not due to any fault on his part. Plaintiffs, on the other hand, testified that they saw no such third car at the time of the collision. The controlling issue in the case, therefore, was whether three or only two cars were involved in the accident.

At the first trial, neither side called Mike as a witness.- The court, commenting on this, told the jury that Mike was equally available to both parties. We held that this statement was unfair to plaintiffs in view of their claim that they had no knowledge of any such person; therefore any unfavorable inference from the failure to call Mike could be drawn only against defendant and not against plaintiffs. At the present trial the situation was different, for not only was Mike in the courtroom during the entire trial, and not only was his presence there known to plaintiffs, but they admitted that they had actually talked to him and also had heard him testify at a previous hearing before the State Highway Department. As before, neither side called Mike to the stand. In their closing addresses to the jury counsel for plaintiffs explained his failure to do so by stating that, according to plaintiffs' contention, Mike was not involved in the accident, while counsel for defendant offered the explanation on his

part that he placed no reliance on what Mike might say if called as a witness. The trial judge repeated to the jury these statements of counsel but said nothing as to what inference, if any, might be drawn from the failure of either or both of the parties to have Mike testify. Apart from the fact that, as already stated, counsel for plaintiffs made no request to the court for such a charge and took no exception to the court's omission in regard thereto, Mike was now available, as plaintiffs knew, to them as well as to the defendant. The ordinary rule, therefore, was applicable, namely, that where a witness is equally available to both parties, no unfavorable inference can be asserted by either against the other for failure to call him, and this is particularly so where the witness is actually in court: *Mosely v. Reading Co.*, 295 Pa. 342, 349, 145 A. 293, 295; *Commonwealth v. Tauza*, 300 Pa. 375, 381, 150 A. 649, 651; Wigmore on Evidence, vol. 2 (3rd ed.) §288, pages 169, 170.

At the first trial there was offered in evidence a police report which purported to describe in detail the manner in which the accident occurred, but, since many of the facts therein stated were not within the personal knowledge of the policemen who made the report and constituted merely hearsay evidence, we held that the court erred in admitting the report in evidence. This error was avoided in the present trial. It is true that one of the policemen, who had not made the record, was allowed to read from it that there were three cars involved in the accident, but this statement was promptly stricken from the record; moreover he was able to testify and did testify of his own knowledge that when he came to the scene he saw three cars there "that were wrecked." Another policeman who joined in making the record was allowed to use it to refresh his recollection; this was obviously permissible. The

court properly refused to allow the record itself to be introduced in evidence.

Plaintiffs find fault with the Court's statement to the jury that the suits were not instituted until three days before they would have been barred by the statute of limitations and that the complaints were not served upon the defendant until after the statute had actually run. Defendant had called attention to this fact because of plaintiffs having argued that if he really believed that Mike was the cause of the accident he would have joined him as a party defendant to the actions and would also have had a photograph taken of his wrecked car; defendant, therefore, was justified in attempting to explain these failures on his part on the ground that it was only two years after the accident that he was called upon to defend the suits then brought against him and it was then too late to join Mike as a party. The court told the jury, at the request of plaintiffs, that the suits were in no wise legally affected by the fact they were brought so long after the accident but still within the statute of limitations.

The court did not err in failing to instruct the jury as to the law of concurrent negligence. There could have been no finding under the testimony that the defendant and Mike were *both* negligent. If Mike's car did not strike defendant's car the defendant would clearly have been at fault in colliding with plaintiffs' car; on the other hand, if Mike's car, by colliding with defendant's car, forced defendant over to the northerly side of the street, Mike alone would have been responsible for the accident.

The final contention of plaintiffs that the verdicts in both the first and second trials were against the weight of the evidence is answered by the fact that defendant's version of the occurrence was supported by two other witnesses as well as by the testimony of the

several policemen who said they saw the *three* cars when they arrived on the scene after the accident.

The judgments are affirmed.