## Golden v. SEPTA

*Barton Haines*, for plaintiff.

*Edward Greer*, for defendant.

*Marvin Goldberg*, for additional defendant.

CHUDOFF, J., June 21, 1972.—In this action to recover damages for alleged personal injuries, the jury returned a verdict in favor of both defendants

on January 27, 1972. Plaintiffs filed a motion for new trial on January 31, 1972. The court heard argument on the motion on June 2, 1972, and held the case under advisement.

On July 13, 1963, about 7:30 p.m., the wife-plaintiff was a passenger on a PTC trolley proceeding west on Lancaster Avenue, between Forty-first and Aspen Streets. The trolley contacted the automobile of the additional defendant, Joseph Tenner, which was either pulling in or pulling out of a parking space at the curb. There was testimony that the impact was slight. The wife-plaintiff claims that as a result of that impact, she was thrown forward against the seat in front of her, and then she fell back into her seat, sustaining injury to her back. There was testimony that at the time of the accident, none of the passengers complained of any injury. Mrs. Golden testified that after the accident, she continued on her journey home. During her homeward trip, she stated that she began to feel pain. When she reached home, she told her husband about the occurrence and he immediately took her to the office of Dr. Nicholas Mauriello. On cross-examination, Charles Golden, the husband-plaintiff, testified that Dr. Mauriello had treated him on other occasions for injuries involved in personal injury claims. Dr. Mauriello diagnosed the wife-plaintiff's condition as acute strain and sprain of the neck and low back. During the course of treatment, Dr. Mauriello referred the wife-plaintiff to three additional doctors: La Fia, Resnick and Tronzo. The extent of the injuries suffered by the wife-plaintiff as a result of the collision was vigorously disputed at trial, and the medical testimony offered by defendant on this issue seriously conflicted with that offered by plaintiffs. Defendant's expert witness, Dr. Leonard Klinghoffer, examined

Mrs. Golden in 1964 and again in 1970. He testified that on both occasions he concluded that there was nothing wrong with Mrs. Golden.

Plaintiffs have raised seven arguments in support of their motion for new trial, six of which are without merit and require no discussion. However, as their fifth assignment of error, plaintiffs contend that the court committed reversible error in affirming defendant SEPTA's point for charge no. 17, and in reading it to the jury. Defendant SEPTA's point for charge no. 17 reads as follows:

"From the plaintiff's failure to call Dr. Resnick without offering a satisfactory explanation for his absence, you may infer that his testimony would favor the defendants."

At the time the court affirmed this point for charge and so instructed the jury, such a charge was proper under the circumstances of this case. In fact, in the case of Bentivoglio v. Ralston, 218 Pa. Superior Ct. 121, where this court affirmed a similar point for charge in a similar situation, the Superior Court affirmed the trial court per curiam, with two judges dissenting. However, on March 20, 1972, the Supreme Court handed down its opinion in the case of Bentivoglio v. Ralston, 447 Pa. 24, 29 (1972), in which the Superior Court was reversed. In its opinion, the Supreme Court stated that:

"Generally, if a litigant fails to call a witness who presumably would support his allegations, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. Haas v. Kasnot, 371 Pa. 580, 92 A. 2d 171 (1952); Moseley v. Reading Co., 295 Pa. 352, 145 A. 293 (1929); Abrams v. Crown, 178 Pa. Superior Ct. 407, 116 A. 2d 331 (1955). But this rule is inapplicable if such wit-

ness is equally available to both sides of the litigation. Haas v. Kasnot, 377 Pa. 440, 105 A. 2d 74 (1954); see also Davidson v. Davidson, 191 Pa. Superior Ct. 305, 156 A. 2d 549 (1959). In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. Cf. 2 Wigmore, Evidence, §288 (3d ed. 1940)."

The court went on to hold that in a situation where the opposing party has notice or knowledge of the identity of a doctor who treated a plaintiff during his convalescence, and this doctor is not called as a witness, defendant is not entitled to an instruction that the jury may infer that the witness, if called, would be unfavorable to plaintiff. In the Bentivoglio case, the Supreme Court found this to be prejudicial error, and ordered a new trial.

The court has concluded that the Supreme Court's decision in the Bentivoglio case compels the granting of a new trial in the case at bar. Although Dr. Resnick's name was not listed in the pretrial interrogatories, defendant had knowledge of his treatment of wife-plaintiff at least since the trial of this case before a panel of arbitrators on November 3, 1971. Moreover, Mrs. Golden testified that she consulted with Doctor Resnick during the first day of an eight-day trial. Therefore, this is not a case where the uncalled witness is peculiarly within the knowledge and reach of plaintiff.

Defendant SEPTA notes in its brief that the significance of the jury's verdict is that either plaintiffs failed in their burden to establish liability as to either defendant, or that plaintiffs failed to prove any injury or damage as a result of this accident. However, it is more probable that the jury did not believe that Mrs. Golden was injured at all in the

accident. Viewed in this light, it is evident that the court's instruction to the jury on the inference to be drawn from plaintiffs' failure to call Dr. Resnick may have had a prejudicial effect on the jury. Therefore, this matter may not be dismissed as harmless error but instead, a new trial must be granted in the interest of justice.

Defendant SEPTA argues that the Bentivoglio decision should not be followed, since Mrs. Golden's doctor is not, in fact, equally available to both sides. Counsel asserts that under the rule announced in Evans v. Otis Elevator Co., 403 Pa. 13 (1961), a doctor who treated a plaintiff may assert a privilege not to testify on behalf of the defendant. However, there is no merit to this argument. The Act of June 7, 1907, P. L. 462, 28 PS §328, provides that:

"No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, which shall tend to blacken the character of the patient, without consent of said patient, *except in civil cases, brought by such patient for damages on account of personal injuries.*" (Italics supplied.)

Moreover, under Pennsylvania law, a litigant would not have a right to prevent a physician from disclosing medical information acquired during the physician-patient relationship and sought to be elicited during the course of a suit brought by plaintiff on the basis of her medical condition: Panko v. Consolidated Mutual Insurance Company, 423 F. 2d 41 (3rd Cir., 1970).

It is clear, therefore, that there is no legal impediment which would prevent a defendant from calling plaintiff's treating physician as his own witness to testify concerning the injuries which are the basis of the suit during the trial of a personal injury suit. Dr.

Resnick was equally available to both sides under the Bentivoglio case, and so the court's affirmance of the point for charge was error.

For the aforesaid reasons, the plaintiffs' motion for a new trial is granted.