Foster *v.* Mifflin County Retirement Board, et al.

Argued April 2, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Harry B. Thatcher,* for appellants.

*D. M. Barron,* with him *Houck, Barron & Zimmer-
man,* for appellee.

OPINION BY JUDGE ROGERS, May 18, 1973:

This is an appeal from an order in a mandamus ac-
tion entered in the Court of Common Pleas of Mifflin
County in favor of William M. Foster, the plaintiff,

and against the defendant, Mifflin County Retirement Board, after a trial before President Judge R. PAUL CAMPBELL of the Court of Common Pleas of Centre County, Specially Presiding. The sole issue of fact tried below was whether William M. Foster's employment as a deputy sheriff of Mifflin County was terminated on December 13, 1969 by his voluntarily leaving that employment or whether he was discharged by the Sheriff. If his leaving the County's employ was voluntary he is entitled only to a return of his contributions to the County's retirement plan with interest, but if he was discharged he will receive retirement benefits under the plan.

The only direct testimony as to the circumstances of Foster's termination was his own account. This discloses that he had worked as a Deputy in the Sheriff's office for more than 19 years; that in the spring primary and at the Municipal Election in 1969 he stood for the then newly created office of District Justice and that he was nominated and elected. One of the qualifications, however, for that office was the attainment of a passing grade in an examination conducted on December 24, 1969. Foster believed that in order for him to pass the examination it would be necessary for him to attend a course of instruction conducted by the Department of Education of the Commonwealth every evening between the hours of 7 and 11 and all day Saturday, commencing December 1, 1969. According to Mr. Foster, as a result of his attendance at these classes and the necessity to do the assigned reading at night, he was unable efficiently to perform his full-time duties as a deputy sheriff. The Sheriff, after warning, discharged him. The Sheriff who had employed him and who terminated his employment was his brother, H. Fred Foster, and his replacement as deputy sheriff was another brother, Walter Foster. While the last

mentioned circumstances cast a shadow over the plaintiff's case, it is, on the other hand, supported by the fact that there was no certainty that he would finally qualify as a District Justice and by evidence that of the 300 persons elected to that office in the State at least two failed the examination and hence to qualify. In any event, the plaintiff's testimony as to his discharge was clear and unshaken by cross-examination.

The only person who testified for the defendant Retirement Board was the Chief Clerk of the County who acted as secretary of a special meeting of the Salary Board of Mifflin County held on December 16, 1969. Over objections of plaintiff's counsel, she was permitted to read a portion of the minutes of that meeting, and, still over objection, the minutes themselves were admitted, both subject to later ruling on the objections. The complete minutes of the meeting are as follows:

"Lewistown, Pa.                    December 16, 1969

"SPECIAL MEETING: Present were Charles E. McNitt, Chairman, Paul A. Sierer, and Philip E. Gingerich, Board of Commissioners. H. Fred Foster met with the Commissioners at 10 A.M. during which time he informed them that, *'William M. Foster quit as First Deputy Sheriff at close of business December 15, 1969, and he had appointed Walter Foster as First Deputy effective December 16, 1969.'* The Sheriff requested both deputies receive the same salary, or $4700.00 per year, because his first request for $5,000.00 each met opposition. Chairman McNitt called a Salary Board Meeting during which time Harry E. Sheaffer joined the Commissioners. Motion by Paul A. Sierer, seconded by Harry E. Sheaffer, and unanimously passed to set the salary of Walter Foster, First Deputy at $4800.00 per year. The Second Deputy's salary had been set at the previous Salary Board Meeting.

"Meeting adjourned at 10:30 a.m." (Emphasis supplied.)

The defendant's admitted sole purpose for offering the minutes was to prove that the plaintiff voluntarily left his employment by the Sheriff's statement included in that portion of the minutes purporting to be a direct quotation of a part of what he said. The only other evidence adduced by the defendants of any probative value was a stipulation that one of the Salary Board members, Charles McNitt, if called, would testify, over objection, that the Sheriff did, at the meeting of December 16, 1969, make the remark quoted in the minutes. This too was received subject to later ruling on the objection.

Judge CAMPBELL found for the plaintiff, concluding that the only competent evidence of the plaintiff's termination was his own testimony that he had been discharged by reason of his inability to perform his duties as deputy sheriff while attending the District Justice classes. This conclusion, with which we agree, was arrived at by disregarding as incompetent hearsay the minutes of the Salary Board, the Chief Clerk's reading from those minutes, and the stipulated testimony of Mr. McNitt.

Obviously, the Chief Clerk's and Mr. McNitt's testimony as to what the Sheriff said on December 16, 1969 was hearsay and properly disregarded. The minutes themselves could only be admissible under the exception to the hearsay rule for books kept in the regular course of business statutorily established by the adoption in Pennsylvania of the Uniform Business Records as Evidence Act, Act of May 4, 1939, P. L. 42, 28 P.S. §91a et seq. as follows: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation,

and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Section 2, 28 P.S. §91b. Judge CAMPBELL, exercising the discretion conferred by the statute, disregarded the minutes because they were admitted by the clerk not to be a verbatim transcript of what went on at the meeting but a mere summary of the occurrences.

Judge CAMPBELL'S exclusion of the minutes seems to us to have been correct for the additional reason that the quoted statement does not meet the condition for the admission of business records laid down in *Paxos v. Jarka Corporation*, 314 Pa. 148, 171 A. 468 (1934), that the record should have been made at a time when it was impossible to anticipate reasons for making an entry not altogether truthful; or, in other words, that the entry must have been made *ante litem motam*. Not only does the fact that the utterance attributed to the Sheriff is placed in quotations indicate an eye on future litigation, but the record discloses that on the very day of this meeting the Chief Clerk, on instructions of the Retirement Board, the majority of whose members are also members of the Salary Board, addressed a letter to the County's actuaries stating that she had been informed by the Sheriff that ". . . William Foster would no longer be his deputy as of the close of business December 15, 1969 . . ." and asking whether William Foster should be refunded his member's accumulations or if he were eligible for annuity payments. In *Miller v. Pittsburgh Coal Company*, 129 Pa. Superior Ct. 1, 4, 195 A. 151 (1937), a notation in hospital records that a workmen's compensation claimant's injury had nothing to do in aggravating or inducing a particular condition was declared to have been improperly received

or considered ". . . for it smacked too much of a defense to an anticipated compensation claim, and, in consequence, was lacking in the second requirement . . . referred to . . . in Paxos v. Jarka Corporation . . . ."

One other circumstance in this case deserves mention. The Sheriff, H. Fred Foster, was in the courtroom during the trial but called by neither party. The appellant Retirement Board contends that it was error for Judge CAMPBELL to suggest, as he did, that the failure of the defendant Retirement Board to call the Sheriff indicates that his testimony would be favorable to the plaintiff. Since the Sheriff was available to both parties it would seem that under the usual statement of Pennsylvania law no inference might be drawn unfavorable to either party, especially where the witness is in the courtroom. *Haas v. Kasnot,* 377 Pa. 440, 105 A. 2d 74 (1954). This simple statement of the rule is not, however, entirely satisfactory. Wigmore, for instance, holds to the more logical view that the failure to produce an available witness is open to inference against both parties, the particular strength of the inference against either depending on the circumstances. 2 Wigmore on Evidence §288 (3d ed. 1940). And, indeed, in our cases the rule is sometimes stated in terms which would include a weighing of the several parties' need for the testimony. Hence, in *Moseley v. Reading Co.,* 295 Pa. 342, 349, 145 A. 293 (1929), the Court wrote: "Where the evidence is equally accessible to both parties and *there is no reason why one rather than the other should offer it,* the rule [as to inference] is inapplicable." (Emphasis supplied.) *See also Peters v. Shear,* 351 Pa. 521, 41 A. 2d 556 (1945). The Retirement Board had only incompetent hearsay of the events of December 13, 1969, whereas the plaintiff had his own testimony. The circumstances suggest that it would have been peculiarly in the Board's interest to produce the Sheriff.

In any event, immediately following his comments concerning inferences, Judge CAMPBELL writes that "regardless of any inference," his decision must be for the plaintiff. This statement and the absence of competent direct evidence contradicting the plaintiff's account of his termination, renders the judge's reference to the defendant's failure to call the Sheriff, if erroneous, harmless.

In view of the disposition we have made of this matter, we deem it unnecessary to discuss the issue raised by the appellee as to whether the appeal was prematurely taken. Pa. R. C. P. No. 126.

Affirmed.