# Clay *v.* Western Maryland Railroad Company, Appellant.

*Jury—Examination of jurors as to interest—Discretion of court—Trial —Practice, C. P.*

The refusal of the trial judge to permit a preliminary examination of jurors as to their interest, will not constitute reversible error where there is nothing to show that the result of the inquiry, if allowed, would afford any ground of challenge for cause, or show such an interest as would disqualify a juror, or that the jurors had formed an opinion, or had any bias or relationship, or had such a connection with the parties, or the subject-matter of the controversy as to affect their impartiality. It is the proper practice in such cases to allow a general inquiry as to the direct or even contingent interest of jurors in the result of the litigation, or in the parties to it, when there appears to be any reasonable ground to believe that some of them may have a possible interest in the result of the litigation, or in the parties, in order that an impartial jury may be selected free from bias or interest; but failure to do so will not constitute reversible error, unless established rules of law are violated, or cause for challenge be shown, or the right to show bias or interest of the jurors

be denied, or inquiry into such material facts as might interfere with the selection of an impartial jury be refused.

In an action against a railroad company the appellate court will not reverse a judgment against the defendant because the trial judge refused to permit an examination of jurors on their voir dire to determine whether any of them were employees of another railroad company, where there is nothing in the record to show that such company was interested in, or was in any way connected with, the litigation, or that it would be affected by any verdict that might be rendered.

*Practice, C. P.—Trial—Answers to points—Refusal to read points—Act of March 24, 1877, P. L. 38.*

Under the Act of March 24, 1877, P. L. 38, points answered in writing and in the negative need not be read to the jury.

*Negligence—Railroads—Joint use of yard.*

In an action by an employee of one railroad company against another railroad company to recover damages for personal injuries sustained in a collision in a yard between two trains of the respective companies, a recovery may be had where it appears that the defendant company and the other company had the joint use of the tracks at the place of the accident, subject to certain rules and regulations, and that the defendant company had not complied with such rules and regulations in providing proper guards and protection against the collision.

Argued April 27, 1908. Appeal, No. 383, Jan. T., 1907, by defendant, from judgment of C. P. Cumberland Co., Sept T., 1907, No. 115, on verdict for plaintiff in case of Alfred M. Clay v. The Western Maryland Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries.

SADLER, P. J., charged in part as follows:

The plaintiff in this case has brought his action to recover from the Western Maryland Railroad Company, the defendant, damages to compensate him for the injuries he received on February 21, 1906, from the alleged negligence of the employees of the said defendant.

It appears that the plaintiff was the baggage master on train No. 97, which daily makes two trips from Gettysburg to Harrisburg and return, over the lines now controlled and operated by the Philadelphia and Reading Railroad Company.

That the scheduled time for the return of this train to Gettysburg from its second trip was at or about five minutes after nine o'clock in the evening. That on February 21, 1906, it arrived there about 9 : 28 or 9 : 30, being almost a half hour late, and having unloaded its passengers and baggage, the train was pushed back on what is called a wye, in order that the engine might be turned, and made ready for the first trip to Harrisburg on the following morning; that the train consisted of a combination car in which the baggage was carried, of a passenger coach, and of a mail car; that as the train approached the station, the brakeman on the train dropped off, in order that he might open the switch to permit the train to enter the wye; that Garvin, the conductor of the train, and the plaintiff, the baggage agent, took their positions on the rear platform, the latter intending, as it seems was his duty, to be there in order to drop off and open the second switch on the wye; that the engineer backed the train in the direction of and upon this wye; that the night was misty or foggy and very dark; that after entering the switch a short distance the train ran into a train of cars which had been placed on one of the legs of the wye, and as a result of the collision Garvin and Clay were thrown down—Clay, the plaintiff, falling on the tracks and seriously injured, both legs being broken. He was taken to a hospital in Harrisburg, was treated as has been testified to, and you have heard how long he was treated, when he left the same, and his further treatment in his home, and when he was again able to go to work, and you have seen and heard of his present condition.

It appears that the Western Maryland Railroad had a short time previously brought in a train on this same leg of the wye, consisting of ten cars and a caboose—nine of the cars being loaded with coal; that it had cut the engine off from the front of the train and gone to another point to secure additional cars, which were to be added to the train; no light was put on the front of the train, or anyone left in charge, nor any signal of any sort, to warn others who came on the siding that cars were standing there, but the testimony is that there were lights on the caboose, which was on the rear of the same, and the plaintiff contends that the very fact that lights were put on one end is a recognition of a like duty to give like in-

formation that the train was on the wye, at its other or front end.

The plaintiff contends that the wye was entered at the usual rate of speed by the train on which he was; that the same was under control, and due care exercised in its movement, and on his part, and that while he and Garvin were looking in front of them the car of defendant's train was not visible until they were almost upon it, and when observed, it was impossible to prevent the collision.

The rules of the respective companies were offered in evidence, and witnesses were called who testified as to the manner in which trains were to run under them on the tracks when the accident occurred. For the purpose of showing, on the one hand, that they had not been violated by the plaintiff, or by those in charge of the train, the conductor and engineer; and on the other hand, that they had been violated on their part; and also, on the other hand, rules were offered to show that they had been so violated by the plaintiff, or his railroad, and to show that by the exercise of due care on part of the plaintiff that the accident would not have occurred. Both sides also claim a violation of the rules of the other—the defendant claims that the Reading violated its rules; the Western Maryland claims that the Reading violated its rules. Both parties urge that they obeyed the rules or the practice under them; the testimony is contradictory, and you will have to find what the truth is. We leave for you to find what the rules are which governed the operation of trains at the place of accident, and on that night; from the printed ones offered in evidence, and the practice under them, as to the movement, conduct and control and care of trains of cars, as it has appeared to you to be from the testimony of the witnesses, on one side and the other.

The defendant also insists that the plaintiff, conductor and engineer could or should have been made aware of the presence of the train by reason of the lights on the caboose, and electric lights on the streets of Gettysburg, which were located some distance from the tracks or from the train. On the other hand, testimony was adduced for the purpose of proving that owing to obstructions which intercepted the rays of the same, and also owing to the character of the night, the misty and

foggy condition of the atmosphere and the intense darkness, this was impossible. Much testimony was also offered as to what was meant by the control of a train; one set of witnesses insisting that at the rate of speed at which the train admittedly ran it was not under control, and especially under the conditions of the night and of the atmosphere and the intense darkness, while this, as already stated, was testified to the contrary by the witnesses called on behalf of the plaintiff.

Contradictory testimony was also given as to the duty and practice under the rules of the respective companies. These disputed questions of fact will be for your consideration and determination, keeping in mind that as the plaintiff has brought this action, the burden is on him to establish his right to do so by satisfactory evidence, and by the weight of the same.

Verdict and judgment for plaintiff for $15,000. Defendant appealed.

*Errors assigned* among others, were (1) in refusing to permit jurors to be examined as to interest; (2) in not reading certain points to the jury; (3–44) various rulings and instructions.

*F. E. Beltzhoover* and *E. M. Biddle, Jr.*, with them *C. S. Duncan*, for appellant.—The inquiries of jurors under the authorities should clearly have been allowed: Comfort v. Mosser, 121 Pa. 455; Mfg. Co. v. Hopkins, 141 Pa. 30; Cummings v. Gann, 52 Pa. 484; Scranton City v. Gore, 124 Pa. 595.

Points should be answered plainly and affirmed or refused: Curtis v. Winston, 186 Pa. 492; Kurtz v. Hoke, 172 Pa. 165; Citizens' Pass. Ry. Co. v. Ketcham, 122 Pa. 228; Lingle v. R. R. Co., 214 Pa. 500; Swank v. Phillips, 113 Pa. 482; Widdall v. Garsed, 125 Pa. 358; Krug v. Peale, 35 Pa. Superior Ct. 1; Fraim v. Ins. Co., 170 Pa. 151.

*S. B. Sadler*, with him *Lyman D. Gilbert* and *W. C. Sheely*, for appellee.—The Philadelphia & Reading Railway Company had not even a remote or contingent interest in the determination of the case. The mere fact that the plaintiff was an employee of the road, or that certain of the officials appeared as witnesses, by virtue of a duly served subpoena, is

not sufficient : Benedict v. Penna. Coal Co., 6 Kulp, 221 ; Commonwealth v. Boston & Maine R. R. Co., 57 Mass. 25 ; Silvis v. Ely, 3 W. & S. 420 ; Clifford v. State, 61 N. J. Law, 247 (39 Atl. Repr. 721) ; Mfg. Co. v. Hopkins, 141 Pa. 30 ; Cummings v. Gann, 52 Pa. 484.

Where points close with the request for binding intructions, where there are facts involved for the jury, the points are properly refused : Dietrich v. Lancaster, 212 Pa. 566 ; Whitmire v. Montgomery, 165 Pa. 253 ; Widdall v. Garsed, 125 Pa. 358.

Opinion by Mr. Justice Elkin, May 18, 1908 :

When an appellant in a negligence case deems it necessary to specify forty-four assignments of error, the reasonable inference is that the case was either very well tried, or very poorly tried, in the court below. If there is anything in the record to justify the numerous assignments, the case must indeed have been carelessly and indifferently presented and considered at the trial. On the other hand, it may be, that the case was so well tried that the learned counsel for appellant, finding it difficult to assign any material and reversible error, have concluded to strengthen a weak case by making a formidable array of assignments. After a careful consideration of the whole record we have concluded that the latter is the proper inference to draw in the present case, which was presented and defended by capable and able counsel, and every objection and motion made on either side, all points submitted, and the rulings of the learned trial judge clearly show that the cause was tried with more than ordinary skill and care. The record is a demonstration that not only the court, but counsel on both sides, knew the law and carefully applied it to the facts of the case. The assignments are so numerous as to be suggestive of firing at random in the bushes in the hope that a stray shot might produce a favorable result. Well directed aim is better marksmanship and, as a rule, more satisfactory to the marksman. At the argument, it occurred to the writer of this opinion that if the defendant company had a right to the joint use of the track, and the train collided with was rightfully on the leg of the wye at the time of the accident, no negligence could be imputed to it for doing what it had a

right to do. On consideration, however, it is clear this view loses sight of the fact that the arrangement for the joint use of the track was subject to the rules and regulations governing that joint use, and if the defendant company failed to comply with the rules to which the joint use was subjected, of which proper guards and protection to a standing train was one, there could be a recovery of damages because of failure to perform its duty in this respect. As to negligence of the defendant, and the contributory negligence of the plaintiff and his fellow servants, we are all of opinion that it was a case for the jury and that there was no reversible error committed in its submission.

The first assignment seeks to convict the learned trial judge of error in refusing to permit an examination of jurors on their voir dire to determine whether any of them were employees or stockholders of the Reading Railway Company. There was nothing in the record to show that this company was interested in, or was in any way connected with this litigation, or that it would be affected by any verdict that might be rendered. In such matters something must be left to the sound discretion of the trial judge who is always presumed to act in good faith, and refusal to permit such a preliminary examination will not constitute reversible error where, as in the present case, there was nothing to show that the result of the inquiry, if allowed, would afford any ground of challenge for cause, or show such an interest as would disqualify a juror, or that the jurors had formed an opinion, or had any bias, or relationship, or had such a connection with the parties, or the subject-matter of the controversy, as to affect their impartiality. It must not be overlooked that the purpose of the inquiry was not to discover whether the jurors had any interest in the case, or were connected in any manner with the parties to the controversy, or that they had any bias, or had formed any opinion on the question involved, but it was directed to the single purpose of ascertaining whether they were stockholders or employees of another railroad company. Under these circumstances the rule of Comfort v. Mosser, 121 Pa. 455, does not apply. In this connection, it may be remarked, that the better practice is to allow a general inquiry as to the direct or even contingent interest of jurors, in the result of the litigation,

or in the parties to it, when there appears to be any reasonable ground to believe that some of them may have a possible interest in the result of the litigation, or in the parties, in order that an impartial jury may be selected, free from bias or interest. However, failure to do so will not constitute reversible error, unless established rules of law are violated, or cause for challenge be shown, or the right to show bias or interest of the jurors be denied, or inquiry into such material facts as might interfere with the selection of an impartial jury be refused.

Under the second assignment, it is contended the Act of March 24, 1877, P. L. 38, imperatively requires all points and answers to be read to the jury, and that failure to do so is reversible error. All of the points submitted by the defendant were correctly answered in writing by the court, but those answered in the negative were not read to the jury, and this court has said in several cases that this is not required: Kroegher v. McConway & Torley Co., 149 Pa. 444; Kreamer v. Smith, 187 Pa. 209; Carey v. Buckley, 192 Pa. 276. The points affirmed, and the answers thereto, were read to the jury, while those refused were answered in writing but not read to the jury. All of the points, affirmed or refused, together with the answers thereto, were filed by the learned trial judge and did become a part of the record in the case. This seems to be the established practice throughout the commonwealth, and is all that is required under the rule of our cases.

Assignments of error overruled and judgment affirmed.