Bentivoglio, Appellant, *v.* Ralston.

Argued November 11, 1971.  Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Joseph V. Restifo,* for appellant.

*Joseph G. Manta,* with him *James M. Marsh,* and *LaBrum and Doak,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1972:

In this action to recover damages for personal injury, the jury returned a verdict for the plaintiff against the defendant in the sum of $7,500. Contending that trial errors influenced an inadequate and unfair award, the plaintiff filed a motion for a new trial limited to the question of damages. When the trial court denied this motion, and judgment was entered on the verdict, the plaintiff filed an appeal in the Superior Court. The judgment was subsequently affirmed, without opinion, with Judge HOFFMAN filing a dissenting

opinion in which Judge SPAULDING and Judge CERCONE, joined. See 218 Pa. Superior Ct. 121, 275 A. 2d 691 (1971). We granted allocatur.

The action stemmed from a collision on March 16, 1963, between two automobiles; one operated by the plaintiff and the other by the defendant. Both vehicles were proceeding north on Roosevelt Boulevard in Philadelphia and admittedly the defendant's automobile ran into the rear of the plaintiff's automobile, after it had come to a stop because of a traffic light at the intersection where Red Lion Road crosses the Boulevard highway. The testimony, however, was in conflict as to exactly how long a period the plaintiff's automobile was stopped before the collision occurred, and also as to whether or not it had switched from one traffic lane to another immediately before being hit.

The litigation should have long since been finally resolved nevertheless, we are persuaded another trial is unfortunately necessary.

The extent of the injuries suffered by the plaintiff as a result of the collision was vigorously disputed at trial, and the medical testimony offered by the defendant on this issue seriously conflicted with that offered by the plaintiff.

In the main, the plaintiff claimed that as a result of the accident he suffered an injury to his neck and back which necessitated the wearing of a neck collar and a back brace continuously for a period of approximately seven months, and the back brace intermittently thereafter up to the date of trial; that he also suffered a loss of the motor muscles in his legs; and that immediately after the accident he incurred psychoneurotic impotence which denied him the ability to enjoy sexual relations with his wife.

An orthopedic surgeon offered as an expert witness by the defendant [who examined the plaintiff on one

occasion] stated that he could find nothing wrong with the plaintiff's neck or back. This witness also attributed the impairment of the muscles in the plaintiff's legs to poor diet, advanced age and nervousness. A psychiatrist-neurologist called by the defendant, testified that from his examination of the plaintiff he could find no organic cause for the alleged impotence and expressed the belief that if such a condition existed, it was due to causes not connected with the accident, possibly plaintiff's "advanced age",[1] and/or an operation plaintiff had undergone on the epididymis about three weeks after the accident.

To support his claim that the injury to his back, neck and legs was due to the accident, the plaintiff offered the trial testimony of a Dr. Abrahamson who treated him from March 1963 to the end of 1964. A neurologist-psychiatrist also testified on plaintiff's behalf and stated that the impotence was definitely caused by the accident. During his own testimony, the plaintiff said that in addition to the physicians who testified at trial, he was given medical attention by a Dr. Rouse and a Dr. Polakoff while he was confined in the Nazareth Hospital in Philadelphia as a patient of Dr. Abrahamson, and after leaving the hospital he "saw" a Dr. Kyle, a urologist, on three occasions; a Dr. Wolgin, an internist; a Dr. Joyce, an orthopedist; a Dr. Waldron; a Dr. Coyle and a Dr. Lin. The number of visits to, and the nature of the treatments given by the last four mentioned physicians were not elicited either on direct or cross-examination.

The trial judge in his charge read a point for charge submitted by the defendant instructing the jury, "You may draw an inference from the failure of the plaintiff to call as witnesses Dr. Lin, Dr. Polakoff, Dr. Rouse,

---

[1] At the time of the accident, the plaintiff was 57 years of age.

Dr. Waldron, Dr. Joyce, Dr. Wolgin and Dr. Coyle, or to satisfactorily explain their absence, that if these doctors had been called to testify, their testimony would have been unfavorable to the plaintiff."

Under the circumstances presented, the above instruction was error, and since it seriously affected the most important issue facing the jury, it was unquestionably prejudicial.

Generally, if a litigant fails to call a witness who presumably would support his allegations, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. *Haas v. Kasnot,* 371 Pa. 580, 92 A. 2d 171 (1952) ; *Moseley v. Reading Co.,* 295 Pa. 342, 145 A. 293 (1929) ; *Abrams v. Crown,* 178 Pa. Superior Ct. 407, 116 A. 2d 331 (1955). But this rule is inapplicable if such witness is equally available to both sides of the litigation. *Haas v. Kasnot,* 377 Pa. 440, 105 A. 2d 74 (1954) ; see also *Davidson v. Davidson,* 191 Pa. Superior Ct. 305, 156 A. 2d 549 (1959). In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. Cf. 2 Wigmore, Evidence, §288 (3d ed. 1940).

Herein, the defendant took the pretrial deposition of the custodian of the records of Nazareth Hospital. The defendant, therefore, was at least knowledgeable before trial of Dr. Rouse's and Dr. Polakoff's connection with the treatment of plaintiff's injuries. Moreover, the defendant took the pretrial deposition of the plaintiff and was afforded the opportunity of ascertaining at that time the identity of all doctors who had treated the plaintiff during his convalescence. Finally, the plaintiff's testimony as to the doctors who aided in the treatment of his injuries was given on the first of a five-day trial. Under the circumstances, this is

not a case where the uncalled witnesses were "peculiarly within the knowledge and reach" of the plaintiff.

It is argued that the defendant should not be forced to assume the burden of having these physicians testify, but this is not the issue. The controlling point is that these witnesses were not "peculiarly within the reach and knowledge" of the plaintiff; hence, the plaintiff's failure to call them as witnesses did not give rise to an unfavorable inference.

It is further argued that the error in the charge was not preserved for appeal by timely exception. The record shows that immediately after the jury left the jury box and retired to begin its deliberations, counsel for the plaintiff and for the defendant both requested a specific exception to the points for charge submitted by each side, which were approved and read to the jury by the trial judge. The court granted the request. While the trial judge could properly have refused to allow any exceptions to the charge after the jury retired (See Rule 227(b) of Pa. R. Civ. P. and *Dinio v. Goshorn,* 437 Pa. 224, 270 A. 2d 203 (1970)), the instant record is clear, however, that the trial judge allowed the exceptions to be recorded. This was within the court's prerogative.

Another assignment of error which may present a problem at retrial needs discussion.

Prior to voir dire examination, plaintiff's counsel requested that the prospective jurors be asked questions similar to the following.[2]

1. Is anyone of you an employee or a stockholder in any casualty company?

---

[2] The record does not indicate this occurrence. However, defendant's counsel concedes that plaintiff's counsel requested permission to ask questions of this nature, and the trial court's opinion in support of its order refusing a new trial makes the same concession.

2. Do anyone of you engage in the general insurance agency business or is anyone of you an agent for a casualty insurance company?

3. Has anyone of you ever worked as a claim investigator or insurance adjustor?

The trial judge refused the request because he felt any information of this nature which may be necessary to assist counsel in empanelling a fair jury could be obtained through more general questions, and further that allowing the proposed questions would needlessly interject the element of insurance coverage into the case.

A study of Pennsylvania cases dealing with proper voir dire examination of jurors indicates these basic principles. The purpose of voir dire examination is to secure a competent, fair and impartial jury. *Commonwealth v. Corbin*, 426 Pa. 24, 231 A. 2d 138 (1967). Questions of a general nature should be permitted to ascertain any direct or contingent possible interest a juror may have in the result of the litigation or in the parties involved. *Clay v. Western Maryland R. R. Co.*, 221 Pa. 439, 70 A. 807 (1908). A trial judge has broad discretion as to the questions to be asked, but its exercise is subject to the basic demands of fairness. *Commonwealth v. McGrew*, 375 Pa. 518, 100 A. 2d 467 (1953). And, the rulings of the trial judge will not constitute reversible error "unless established rules of law are violated, or cause for challenge be shown, or the right to show bias or interest of the jurors be denied, or inquiry into such material facts as might interfere with the selection of an impartial jury be refused." *Clay v. Western Maryland R. R. Co.*, supra, at 446, 70 A. at 809.

The challenging ruling of the trial court in the instant case comports with these principles and no reversible error ensued. It is significant, if not disposi-

tive, to note that the plaintiff does not assert that the ruling of the trial court resulted in any prejudice or that the jury empanelled in the case was not fair and impartial.

While the plaintiff maintains the new trial should be limited to the issue of damages, after a consideration of the entire record, we are persuaded that a new trial generally will best comport with the ends of justice.

The order of the Superior Court affirming the judgment entered in the trial court is reversed and a new trial is ordered.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.