James C. CONNOR

v.

**CRESCENT LIGHTING CORPORATION**

and

**Ryder Truck Rental, Inc.**

**Civ. A. No. 70-3262.**

United States District Court,
E. D. Pennsylvania.

Aug. 15, 1973.

James E. Colleran, Philadelphia, Pa., for plaintiff.

C. Gary Wynkoop, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff was awarded an $80,000 verdict after trial by jury in which liability was stipulated against the defendant. Defendant now moves pursuant to Fed. R.Civ.P. 59 for a new trial on the issue of damages. The following grounds are asserted by the defendant in support of the motion for a new trial: (1) the verdict of the jury was excessive, (2) the court erred in denying defendant's Motion for Withdrawal of a Juror on the ground that the plaintiff engaged in inflammatory conduct while on the witness stand. resulting in prejudice to the defendant, (3) the court erred in refusing to instruct the jury that they could infer from the failure of plaintiff's neurologist to testify that the testimony of the neurologist would not have supported plaintiff's contention, (4) the court erred in permitting drug lists prepared by plaintiff and plaintiff's pharmacist to go out with the jury, and (5) the court erred in discussing plaintiff's future medical expenses in the charge to the jury.

Plaintiff, in 1961, had two attacks of a viral infection known as herpes zoster which produced facial pain. The pain became progressively worse and was subsequently diagnosed as trigeminal neuralgia, popularly called tic douloureux. In 1966, plaintiff came under the care of Dr. Paul Lin, a neurologist, who surgically sectioned the fifth cranial nerve producing total anesthesia of that nerve and a complete relief of pain. Plaintiff experienced no pain until November of 1967 when he was involved in an accident and experienced tic-like pain for one to two months thereafter. During this period he was treated by his neurologist, Dr. Lin. Plaintiff then testified that he was free of pain until December 14, 1968, the date of the accident involved in the present case, when tic-like pain began to re-occur. Plaintiff testified that the tic-like pain has continued until the present time. In addition to Dr. Lin, plaintiff has, since 1964, been under the care of Dr. John Cahill, a general practitioner, who testified as plaintiff's expert.

**64**

Initially, we dispose of the second, fourth and fifth grounds proffered by the defendant in support of the motion for a new trial. Defendant has over-dramatized plaintiff's conduct on the stand. Our observation was that the plaintiff paused for approximately 15 to 20 seconds on two occasions during his testimony, and his eyes apparently watered somewhat. This conduct can in no sense be considered inflammatory or in anyway prejudicial to the defendant. Furthermore, when plaintiff testified, the most seriously contested issue was whether plaintiff was experiencing "real" pain or some kind of imagined pain as a result of the injuries caused by the defendant. When the evidence was submitted to the jury, this issue had completely dissipated primarily because of defendant's own expert witness' testimony that there was no doubt plaintiff was experiencing "real" pain. The only remaining issues were whether the pain experienced by the plaintiff was proximately caused by the injuries inflicted by defendant's admitted negligence and the amount of compensation that should be awarded for the injury caused plaintiff.

The only possible manner in which plaintiff's conduct could realistically have affected the jury was in demonstrating that plaintiff did indeed suffer "real" pain. Thus, even were we to agree that plaintiff's conduct was inflammatory, plaintiff's conduct could not have influenced the jury in its determination as to the cause of plaintiff's pain or the quality and severity of the pain. Other evidence presented by the plaintiff amply supports the degree to which plaintiff's pain has affected his life and his way of living and the jury's finding that plaintiff's pain was caused by defendant's negligence. Plaintiff's conduct did not, therefor, prejudice defendant's case even were we to concede, which we do not, that plaintiff's conduct was inflammatory. See Fed.R.Civ.P. 61.

Defendant's objections to the evidence introduced and to the court's charge concerning plaintiff's medical expenses are without merit. The evidence offered by plaintiff's expert witness and the bills for medicine introduced by plaintiff fully support the jury's verdict in regard to medical expenses. Furthermore, defendant made no objection to the competency of plaintiff's expert to testify as to medical expenses and the medical necessity for the drugs. Finally, our recollection is that neither the introduction in evidence of the drug lists prepared by plaintiff and his pharmacist nor the court's charge was objected to by the defendant.[1] These objections cannot, therefor, be raised now. See Fed.R.Civ.P. 46 and 51.

In arguing that the verdict of $80,000 was excessive, the defendant contends that the only explanation for the verdict was pity for the plaintiff resulting from plaintiff's conduct while testifying. We have already concluded that defendant over-dramatizes plaintiff's conduct on the stand and that the conduct did not affect the jury's award of damages. We also find that there was ample evidence in the record to support the jury's award of damages. Thus, although the amount of damages awarded is more than we may have given, we conclude that the jury's award does not shock the conscience of the court. Gruenthal v. Long Island Railroad Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); Dagnello v. Long Island Railroad Co., 289 F.2d 797 (2 Cir. 1961); Russell v. The Monongahela Railway Company, 262 F.2d 349 (3 Cir. 1958).

In emphasizing the disproportionate nature of the award for special damages to the award for pain and suffering (40 to 1) in support of his motion for a new

---

1. The Notes of Testimony have not been transcribed.

trial, the defendant has completely ignored the evidence produced at trial concerning the quality and severity of the pain suffered by the plaintiff as a result of the defendant's negligence. The one overriding conclusion that must be drawn from the evidence is that the pain associated with tic douloureux (tic-like pain) is one of the most excruciating pains known to modern medicine. Defendant's own expert testified that tic pain has been known often to cause persons suffering from the pain to commit suicide, an action contrary to the primary human instinct to live.

In West v. Jutras, 456 F.2d 1222 (2 Cir. 1972), Judge Moore stated that at least two factors which must be considered in determining whether to grant a new trial for excessiveness are (1) the extent of plaintiff's pain and suffering, and (2) the curtailment of plaintiff's normal activities. The evidence supports the conclusion that plaintiff has suffered, for the four years prior to trial, and will continue to suffer for the 11.7 years he is expected to live, inordinate and excruciating pain. The evidence also shows that plaintiff's normal business activities have been interrupted by the tic pain, that he is in constant fear of pain, and that he awakes during the night screaming in pain. The latter experience has required plaintiff's wife to move into a separate bedroom because of the nocturnal encounters plaintiff has had with pain. Plaintiff has had to change employment twice since the accident because he could not perform his duties with the pain he was feeling. There is evidence that plaintiff's personality has changed for the worse because of the continuing fear of the excruciating pain caused by the tic-like sensations felt by plaintiff. We cannot say that this total disruption of plaintiff's life caused by the tic pain, which is expected to continue until plaintiff's death, is not worth the amount awarded by the jury. Compare Friedman v. N. B. C.

Motorcycle Imports, Inc., 452 F.2d 1215 (2 Cir. 1971) ($80,000 award was not excessive where there was showing of some $11,400 special damage, a hip fracture exposing bone and requiring removal of chips, five operations and skin grafting resulting in pronounced scarring of both legs and there was evidence of substantial pain and osteomyelitis with uncertain prognosis for future); Cf. Fuchstadt v. United States, 442 F.2d 400 (2 Cir. 1971) (award of $125,000 for past, present and future pain and suffering to 61 year old man who before accident had bowled five times a week and preferred employment involving heavy, physical labor, but who because of accident was able to bowl only twice weekly with "handicap league" and experienced constant pain and recurrent headaches, who lost almost all his teeth and who had "square roughened up head of the demur operating in a poorly beaten up socket" which could be expected to deteriorate further was not excessive).

Finally, defendant contends that the court erred in refusing to instruct the jury that the jury could infer from plaintiff's failure to call Dr. Lin that Dr. Lin's testimony would be adverse to the plaintiff. Reliance is placed primarily on Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104 (1949) in which the court stated the following rule: "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact, not a presumption of law."

There are a number of difficulties, however, with reliance upon this statement of law by the *Ferne* court. First, the above-quoted language from the *Ferne* case was unnecessary to the court's decision. In *Ferne* the court was faced with an objection by the defendant, against whom an adverse jury ver-

dict had been rendered, that the plaintiff should have called the physician who treated plaintiff shortly after the time of the accident and before plaintiff's death, and that plaintiff should have produced records of the hospital where plaintiff died. The defendants were not, of course, objecting to the trial court's charge that an adverse inference should be drawn because of plaintiff's failure to produce testimony and records at trial. The court's statement was *obiter dictum.*

Furthermore, *Ferne* states only a general rule which has been given a fuller explanation by the more recent Pennsylvania Supreme Court case Bentivoglio v. Ralston, 447 Pa. 24, 288 A.2d 745 (1972). While *Bentivoglio* reaffirms the general rule that the failure to call a witness who presumably would support the party's allegation will result in an unfavorable inference being drawn, the court stated that this rule is not applicable "if such witness is equally available to both sides of the litigation. [citations omitted] In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties."

Dr. Lin was equally available to both sides in this case. The defendant knew long before trial that Dr. Lin had treated the plaintiff for tic douloureux. And nothing in the physician-client privilege as applied in Pennsylvania or New Jersey would have prevented Dr. Lin from offering his opinion concerning the source and nature of plaintiff's facial pain and the pain's causal relationship to the accident, if any. Pennsylvania's statute establishing the physician-client privilege does not apply "in civil cases, brought by [the] patient, for damages on account of personal injuries." Act of June 7, 1907, P.L. 462, § 1, 28 P.S. § 328. New Jersey's statute, 2A N.J. Stat.Ann. 84A–22.2 does not apply to information acquired by physical examination. Panko v. Consolidated Mutual In-

surance Co., 423 F.2d 41 (3 Cir. 1970). It cannot, therefore, be said that Dr. Lin was peculiarly within the reach and knowledge of one of the parties.

Motion denied.