# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard D. Hissam,            :
              Petitioner     :
                              :
       v.                  :    No. 1344 C.D. 2017
                              :    Submitted: March 23, 2018
Workers' Compensation Appeal Board   :
(Chapman Business Properties),       :
              Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON           FILED: August 22, 2018

Richard D. Hissam (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated September 7, 2017. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied Claimant's claim petitions. We affirm.

Claimant worked for Chapman Business Properties (Employer) as a maintenance man. On June 3, 2014, Claimant filed a claim petition, alleging that on December 3, 2013, he sustained a neck injury in the nature of an aggravation of his foraminal stenosis at C5-6 and C6-7 while working for Employer dismantling heavy industrial shelving. On that same day, Claimant filed a second claim petition, alleging that on December 12, 2013, he sustained a neck injury in the nature of an aggravation of his foraminal stenosis at C5-6 and C6-7 while working for Employer

using a heavy hammer drill in a contorted position. Claimant further alleged that he was disabled as of December 28, 2013, and ongoing thereafter as a result of both work-related injuries.

In support of his claim petitions, Claimant testified before the WCJ at a hearing held on August 20, 2014. Claimant testified that he performed maintenance for Employer at its industrial park. (Certified Record (C.R.), Notes of Testimony (N.T.), August 20, 2014, at 8-9.) Claimant testified further that, on December 3, 2013, he injured his neck and left shoulder while disassembling industrial shelving with a sledgehammer. (*Id.* at 14-16.) Claimant explained that he began to experience numbness and pain in his neck and left shoulder while swinging the sledgehammer. (*Id.* at 15-16.) Claimant also testified that he injured his neck and left shoulder again on December 12, 2013. (*Id.* at 16-17.) On that date, Claimant was using a hammer drill to drill through five-to-six inches of concrete and cement. (*Id.*) Claimant explained that he was lying in a ditch pushing and pulling the drill over his head. (*Id.* at 17-18.) Claimant further explained that while drilling, the drill abruptly broke through the wall and jerked out of his hand, sending pain down his neck and left arm. (*Id.* at 18.)

Claimant stated that his December 12, 2013 injury occurred "close to quitting time," so he did not report it to his foreman until the following day. (*Id.* at 19-20.) Claimant indicated that after reporting the injury to his foreman, he left work to seek treatment from his personal doctor, Dr. Grieco. (*Id.*) Claimant testified further that he returned to work on December 16, 2013. (*Id.* at 20.) At that time, Claimant informed his foreman that his condition was work-related, and his foreman sent him to Employer's panel doctor. (*Id.* at 21.) While treating with Employer's panel doctor, Claimant continued to work for Employer in a limited-duty

2

capacity until December 27, 2013, when he stopped working altogether. (*Id.* at 22-23.) Claimant stated further that Employer's panel doctor discharged him from treatment on December 31, 2013. (*Id.* at 23.) At that time, Claimant returned to his personal doctor, who referred him to a specialist, Dr. Joon Lee (Dr. Lee). (*Id.* at 23-25.) Claimant testified that when he treated with Dr. Lee, he complained of severe pain through his neck and down his left shoulder. (*Id.* at 25.) Claimant stated that Dr. Lee prescribed physical therapy and strength exercises. (*Id.* at 27.) Claimant stated further that Dr. Lee also recommended and ultimately performed surgery to treat his injury. (*Id.* at 25-26.)

On cross-examination, Employer's counsel questioned Claimant about an alleged tree stand incident. (*Id.* at 29-30.) Claimant testified that he never informed his co-workers that he injured his shoulder falling out of a tree stand. (*Id.*) Claimant stated that he does not even hunt out of tree stands. (*Id.* at 30-31.) Claimant stated further that he did not take his son hunting on December 2, 2013, the day he had taken off from work specifically to teach his son how to hunt. (*Id.* at 31.) Claimant also testified that while at work on December 3, 2013, he complained to Brandon Withers (Withers), one of his co-workers, about being "sore and stiff," but he did not attribute the pain to their work disassembling the shelving. (*Id.* at 33-34.) Claimant testified further that he also did not say anything about the pain to his foreman or superintendent, nor did he seek any medical treatment for the December 3, 2013 injury. (*Id.* at 34-35.) Claimant indicated that on the day of the December 12, 2013 incident, he informed his foreman that he felt like a "bolt of lightning" shot through his body while using the heavy drill, but his foreman interpreted his statement as a joke. (*Id.* at 37-39.) Claimant indicated further that he did not explain to his foreman that it was not a joke or that he was in real pain.

3

(*Id.*) Claimant also admitted that he did not say anything to his foreman about either of his injuries until December 13, 2013—ten days after the first work-related incident and one day after the second work-related incident.[1] (*Id.* at 35-36.)

Claimant again testified at a hearing held on August 4, 2015. At that time, Claimant reiterated that he did not fall out of a tree stand in December 2013, and that he does not hunt from tree stands. (C.R., N.T., August 4, 2015, at 8.) Claimant also indicated that while he took off of work on December 2, 2013, to go hunting with his son, he and his son did not go hunting that day. (*Id.* at 9.) Claimant admitted that, while in the break room with his co-workers a few days after the December 3, 2013 incident, he discussed his neck and shoulder pain and the potential causes of his injury. (*Id.* at 10-11.) Claimant stated that during that discussion, his foreman joked that Claimant probably injured himself falling out of a tree stand. (*Id.*) Despite being questioned about the tree stand incident at the August 20, 2014 hearing, this was the first time that Claimant mentioned anything about his foreman's statements regarding Claimant falling out of a tree stand. (*Id.* at 11-12.)

Claimant also presented the testimony of his son, Richard Shane Hissam (Son). Son testified that he, Claimant, and his grandfather would hunt together and that it was typical that Claimant would take off the first day of deer hunting season to go hunting. (C.R., Depo. of Richard Shane Hissam at 21.) Son testified further that he and Claimant planned to go hunting the Monday following Thanksgiving in 2013, but the plans did not work out and neither he nor Claimant went hunting that day. (*Id.* at 21-23.) Son explained that he did not want to go hunting that year because his grandfather passed away in 2012, and, thus, would not

---

[1] Claimant also testified at a hearing held on April 28, 2015. Claimant's testimony on that date is irrelevant to this appeal and, therefore, will not be discussed.

4

be with them. (*Id.* at 21-22.) Son also stated that while hunting with Claimant in the past, he never saw Claimant use a tree stand. (*Id.* at 23.) When he asked Claimant about tree stands, Claimant told him they are not safe. (*Id.*) On cross-examination, Son admitted that he did not have any discussions with Claimant about being injured at work. (*Id.* at 26-27.)

Claimant also presented the deposition testimony of Dr. Lee, who is board certified and specializes in spine surgery. (C.R., Depo. of Dr. Lee at 4-6.) Dr. Lee testified that he evaluated Claimant on January 17, 2014, as a referral from Claimant's primary care physician. (*Id.* at 7-8.) Dr. Lee explained that on that date he performed a physical examination of Claimant, which revealed mild weakness and decreased sensation in Claimant's left arm but no observable signs of jerkiness or hyperreflexia. (*Id.*) Dr. Lee explained that he initially believed that Claimant had developed a syrinx—*i.e.*, a fluid buildup within the spinal cord—and that Claimant's injury was an exacerbation of the syrinx. (*Id.*) As a result, Dr. Lee ordered a new MRI, which revealed spondylitic discs at C5-6 and C6-7 and some symmetric foraminal stenosis at C5-6 and C6-7. (*Id.* at 10.) Dr. Lee testified that he explained to Claimant that injections and ultimately surgery to decompress and fuse the nerves may be required if Claimant's attempts with physical therapy were unsuccessful. (*Id.* at 10-11.) Dr. Lee testified further that he ultimately performed the surgery on Claimant's cervical spine on March 24, 2014. (*Id.*) Based on his treatment of Claimant, Dr. Lee opined within a reasonable degree of medical certainty that Claimant had sustained an exacerbation of spondylitic discs at C5-6 and C6-7. (*Id.* at 19-20.) When asked about whether the December 2 and December 12, 2013 work-related incidents played a role in Claimant's condition, Dr. Lee opined that

5

Claimant's main injury was consistent with the overhead, repetitive drilling activity with heavy equipment. (*Id.* at 21-22.)

On cross-examination, Dr. Lee admitted that his opinion as to the cause of Claimant's injuries was based entirely upon the mechanism of injury provided to him by Claimant—*i.e.*, that the injury was work-related. (*Id.* at 26-27.) Dr. Lee explained that he did not learn the specific details of Claimant's work-related incidents until after he made his diagnosis. (*Id.* at 27-29.) In fact, Dr. Lee indicated that it was not until the day of his deposition that he learned about the two incidents that Claimant described at work. (*Id.* at 29.) Dr. Lee also admitted that his office notes from the January 17, 2014 visit did not include any history of a work-related injury or any indication that Claimant's work activities caused Claimant's condition. (*Id.* at 27-28.) Dr. Lee further admitted that a fall from a tree stand "certainly could be consistent" with Claimant's symptoms. (*Id.* at 41.)

In opposition to Claimant's claim petitions, Employer presented the deposition testimony of Withers. Withers testified that he, like Claimant, performed maintenance for Employer at its industrial park. (C.R., Depo. of Brandon Withers at 4.) Withers testified further that, on December 3, 2013, he worked with Claimant the entire day, disassembling industrial shelving in the warehouse. (*Id.* at 7, 12.) Withers stated that, before lunch on that date, Claimant complained of discomfort and pain in his shoulder. (*Id.* at 8.) Withers stated further that after lunch, he and Claimant continued to disassemble the industrial shelving. (*Id.*) Withers also explained that, while in the breakroom with his co-workers after Claimant returned to work following the first day of deer hunting season, Claimant explained how he had fallen out of a tree stand and injured his shoulder. (*Id.* at 9.)

Employer also presented the deposition testimony of Martin Higgins (Higgins), an investigator for Chubb and Son Insurance (Chubb) with 20 years of training and experience. (C.R., Depo. of Martin Higgins at 3-5.) Higgins explained that as an investigator with Chubb, he is required to investigate claims that may be fraudulent or require more information. (*Id.* at 3-4.) Higgins explained further that Claimant's claim was one of those claims that had been assigned to him for further investigation. (*Id.* at 6.) Higgins stated that he attempted to speak with Claimant multiple times to discuss the claim, and he finally spoke with Claimant on January 15, 2014. (*Id.* at 9-11.) Higgins testified, however, that when he told Claimant that he wanted to meet to discuss the claim, Claimant stated that his injury was not work-related, that he was no longer pursuing a workers' compensation claim, and that he was not interested in meeting with Higgins. (*Id.*) Higgins testified further that he did not have the opportunity to ask Claimant if he had fallen out of a tree stand or if the injury had occurred outside of work because Claimant ended the call. (*Id.* at 20-21, 23-24.)

Employer also presented the deposition testimony of Raymond Drabicki, M.D. (Dr. Drabicki), who is board certified in orthopedic surgery and specializes primarily in arthroscopic surgery of the shoulder and knee. (C.R., Depo. of Dr. Drabicki at 4-5.) Dr. Drabicki testified that, based on his independent medical examination of Claimant, he opined within a reasonable degree of medical certainty that Claimant had sustained a hypertension injury to the cervical spine and neural compression. (*Id.* at 9-10.) Dr. Drabicki opined further that it was likely that Claimant's work injury was responsible for his condition. (*Id.*) Dr. Drabicki further testified, however, that after receiving additional information, he believed that it was

7

"equally plausible" that Claimant's injury was caused by a fall from a tree stand. (*Id.* at 11-12.)

Claimant testified in rebuttal at the hearing held on November 10, 2015. At that time, Claimant testified that he thought Higgins's call was a waste of time, because Employer had already issued a notice of denial and Employer's panel doctor had informed him that the injury was not work-related. (C.R., N.T., November 10, 2015, at 18.) Claimant also noted that he was in traffic when he received the call. (*Id.*)

On May 17, 2016, the WCJ issued a decision, denying Claimant's claim petitions. In so doing, the WCJ summarized the witnesses' testimony and made the following credibility determinations:

> 16.    This [WCJ] finds the testimony of [Higgins] to be credible evidence in support of a finding that [Claimant] stated on January 15, 2014 that his physical condition, his neck and shoulder complaints were not work-related and that he would not be pursuing a workers' compensation claim. He credibly testified that [Claimant] declined to provide any further information and he did not have the opportunity to ask [Claimant] about the deer hunting tree stand version of the events.
>
> 17.    The medical expert testimony of Dr. Drabicki is competent and credible evidence in support of a finding that [Claimant's] physical condition could equally be due to an exacerbation of his pre-existing cervical arthritis as a result of his work duties in December of 2013 or as a result of the history of falling out of a tree stand when deer hunting on or about December 3, [2013]. . . .
>
> 18.    The testimony of [Withers] is credible testimony in support of a finding that [Claimant] told his co-worker that he fell from a tree stand while hunting on the first day of deer season. We know that to be December 2, 2013 and this discussion occurred on Tuesday, December 3, 2013[,] the one occasion when [Claimant] and this witness worked together on the scaffolding disassembly project. Although

8

the father of the witness is an employee of [Employer], there is no evidence that his employment relationship plays any role in this testimony, to the contrary one would presume that a witness's employment was secure whether he testified or not. It is significant that [Claimant] did not state that this co-worker had any bias towards him. This co-worker stated that he did not have any problems with [Claimant], they worked well together.

19. The testimony of Dr. Lee is found credible, in part, in regards to his opinions that: (a) [Claimant] has a degenerative cervical spine condition with bone spurs were [sic] impacting the C6 and C7 nerves. These nerves were the exact area of [Claimant's] shoulder, arm and hand complaints; (b) although the work activities were unknown to Dr. Lee and described to Dr. Lee immediately before his deposition he said they could cause an exacerbation of symptoms, [h]owever, Dr. Lee honestly conceded that any activities could cause an exacerbation. More significantly, Dr. Lee stated that the work activities did not cause or change the pre-existing degenerative changes and bone spurs as these develop over time. [Claimant] did not have a herniated disc or any signs of acute injury.

(WCJ's Decision at 27-28.) With respect to Claimant's credibility, the WCJ reasoned:

> This [WCJ] has carefully reviewed [Claimant's] hearing testimony. [Claimant's] testimony that he aggravated his cervical spine condition as a result of his work activities on December 3 and/or December [12] of 2013 is not credible. This [WCJ] comes to this conclusion for several reasons, all of which are based upon as [sic] review of [Claimant's] testimony.
>
> [Claimant] did not immediately inform [Employer] of his alleged work-related symptoms of December 3, which is not fatal. He said he told [Employer] on December 13, after the prior day drilling assignment. BUT when [Claimant] appeared and testified at the hearing on August 4, 2015, he said the "deer hunting injury story" arose a few days after his

9

arm/shoulder hurt and this story must have come from his [foreman]. This version is implausible as [Claimant's] testimony was that he did not discuss his symptoms with [his foreman] until December 13.

At the initial hearing, on cross-examination [Claimant] adamantly stated that he did not tell any co-workers that he was injured when he fell from a tree stand while deer hunting. "Never happened". At the next hearing [Claimant] now says this incident did happen, but he now said it was his [foreman] who told this story. [Claimant] described there were at least 4 other co-workers present. Yet he did not present any witness to corroborate his testimony or his version of events.

Regarding the hunting incident, [Claimant] said he planned this day off work on December 2, 2013 to train [Son] how to hunt. Yet [Son's] testimony was that he hunted in the past with his father and grandfather. This planned 2013 hunting trip did not occur because of the grandfather [sic] death about one year earlier in 2012.

The version of events described by [Claimant] seem atypical, his shoulder was bothering him one day. He mentions to his co-worker that his shoulder was bothering him, but did not describe it was from the work duties and did not describe there was any numbness, tingling, sharp pain or soreness. He does not mention this to anyone else. He continues to work his regular job for 10 days, without any comment or excuse.

[Claimant] describes pain on December 12 after drilling, which is 100 times his prior discomfort. He describes symptoms so dramatic -- "a bolt of lightning went right down my body", "it just came down my neck and shot out my arm" -- that his [foreman] thought he was joking. Again, there is an inconsistency in [Claimant's] testimony as he says it was near the end of the work day so he did not say anything, "it might have been the next day".

[Claimant] goes home on the 12th and the next morning he asks his [foreman] to go to his

10

personal doctor. [Claimant] claims he told his [foreman] that this request was for a work-related problem, but that seems inconsistent with [Employer's] action on Monday, the 16th. On that occasion, when [Claimant] mentions his condition is work-related, his [foreman] immediately sends [Claimant] to the designated healthcare practitioner. It seems odd this would not be the [foreman's] response on the 12th, if [Claimant] truly stated he had a work-related problem.

When [Claimant] is contacted by the Chubb insurance investigator, [Claimant] will not discuss his claim with him. It's not worker's comp. This telephone call happened January 15, just two days before the first Dr. Lee appointment of January 17. Recall, at the first Dr. Lee visit, the office notes do not reflect that [Claimant] gave any history of a work-related injury or that work activities caused him to have symptoms.

(*Id.* at 28-29.)

Based on her credibility determinations and reasoning, the WCJ concluded that Claimant failed to meet his burden of proving that he suffered a work-related injury on December 3 or December 12, 2013. (*Id.* at 30.) Claimant appealed the WCJ's decision to the Board, which affirmed the WCJ's decision. Claimant now petitions this Court for review.

On appeal,[2] Claimant argues that the WCJ erred by failing to provide a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act).[3] More specifically, Claimant argues that the WCJ's decision is not reasoned because: (1) the WCJ applied the incorrect burden of proof to Claimant's claim

---

[2] Our standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

petitions; (2) the WCJ misapplied the "missing witness rule" and drew an impermissible, adverse inference against Claimant;[4] and (3) the WCJ failed to find that Claimant's medical evidence was unequivocal and competent.[5]

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ finds that the testimony of one witness was more credible than the testimony of another witness. *Id.* at 196.

Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his or her credibility determinations where there is conflicting witness testimony. *Id.* A WCJ may satisfy the reasoned decision requirement if she

---

[4] Claimant also suggests that the WCJ again misapplied the "missing witness rule" by not drawing an adverse inference against Employer for its failure to call Claimant's foreman as a witness. This argument lacks merit and need not be addressed, because Employer did not have the burden of proof with respect to Claimant's claim petitions.

[5] In his brief, Claimant presented three issues for our consideration, all of which relate to whether the WCJ's decision was a reasoned decision. Because all of Claimant's arguments are interrelated, we will address them together.

summarized the witnesses' testimony "and adequately explained [her] credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007), *appeal denied*, 951 A.2d 1167 (Pa. 2008). Thus, "while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains [her] credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012).

Claimant first contends that the WCJ failed to make a reasoned decision because the WCJ applied an incorrect burden of proof. Claimant argues that the WCJ imposed a heightened burden of proof upon him—*i.e.*, not just a preponderance of the evidence—by instead requiring unequivocal proof. In response, Employer argues that Claimant had the burden to prove that his injury was work-related through competent, credible, substantial evidence. Employer also argues that Claimant failed to meet his burden of proof because the WCJ found his testimony to be not credible.

Claimant's entire argument is based on a misinterpretation of the WCJ's decision. Claimant focuses solely on the medical evidence, but ignores the fact that the WCJ's conclusion that Claimant did not meet his burden of proof was based on the WCJ's determination that Claimant's testimony regarding the cause of his injury was not credible. In other words, while the WCJ made credibility determinations with respect to the medical testimony, such medical testimony essentially had no effect on the WCJ's decision. Rather, the WCJ's decision was based upon her finding that Claimant's testimony as to the cause of his injuries was

13

not credible. In finding that Claimant's testimony was not credible, the WCJ noted several inconsistencies in Claimant's testimony.

First, the WCJ noted that Claimant's stated purpose for taking the first day of deer hunting season off of work—*i.e.*, to teach Son how to hunt—seemed inconsistent, because Son testified that he went hunting with Claimant and his grandfather in the past. (WCJ's Decision at 29.) Second, the WCJ explained that it seemed atypical that Claimant told his co-worker that his shoulder was bothering him, but then he did not state that his work activities caused his injury or discuss the injury with any co-workers for ten days. (*Id.*) Third, the WCJ noted that Claimant's version of events was not plausible, because Claimant testified that he did not discuss his symptoms or injuries with his foreman until December 13, 2013, but yet the "deer hunting injury story," which was allegedly made up by his foreman, was discussed a few days after December 3, 2013. (*Id.* at 28-29.) Fourth, the WCJ noted that Claimant's initial testimony that the tree stand conversation never happened was inconsistent with Withers's testimony and his own subsequent testimony on August 4, 2015. (*Id.* at 29.) Fifth, the WCJ noted the inconsistencies in Claimant's testimony regarding the reporting of his December 12, 2013 injury to his foreman. (*Id.*) The WCJ explained that Claimant described his pain as so dramatic and severe—*i.e.*, like "a bolt of lightning went right down my body"—that his foreman thought Claimant was joking, yet Claimant did not remember if he even told his foreman about the pain on the date of the incident or if he waited until the next day. (*Id.*) Lastly, the WCJ noted that Claimant's testimony that he told his foreman that his injury was work-related on December 13, 2013, seemed inconsistent with Employer's actions on December 16, 2013. (*Id.*) The WCJ explained that it seemed odd that Claimant's foreman would not have sent Claimant to Employer's panel

14

doctor on December 13, 2013, if Claimant had told him his injury was work-related, because Claimant's foreman immediately sent Claimant to the panel doctor on December 16, 2013, after Claimant mentioned that the injury was work-related. (*Id.*)

In addition to noting the inconsistencies in Claimant's testimony, the WCJ also credited Withers's testimony that Claimant told Withers that he fell from a tree stand while hunting, and Higgins's testimony that Claimant told Higgins that his injury was not work-related and that he would not be pursuing a workers' compensation claim. (*Id.* at 27-28.) It is clear from our review of the record and the WCJ's decision that the WCJ adequately and objectively explained her credibility determinations based on the conflicting evidence before her as required by Section 422(a) of the Act.

Claimant next contends that the WCJ's decision was not reasoned because the WCJ misapplied the "missing witness rule" and drew an impermissible, adverse inference against Claimant for his failure to present the testimony of his co-workers present during the "tree stand discussion" and his treating physician, Dr. Grieco. More specifically, Claimant argues that the application of the "missing witness rule" is impermissible with respect to his co-workers because his co-workers were not peculiarly within his control. Claimant argues further that an adverse inference with respect to Dr. Grieco was also impermissible because such an inference cannot be drawn with respect to treating physicians. In response, Employer argues that nothing in the WCJ's decision reflects that any adverse inference was made for Claimant's failure to present Dr. Grieco's testimony.

Generally, if a party fails to call a witness whose testimony presumably would support his allegation, "the opposing party is entitled to have the jury

15

instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him." *Bentivoglio v. Ralston*, 288 A.2d 745, 748 (Pa. 1972). The missing witness rule provides that

> [w]here evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

*Haas v. Kasnot*, 92 A.2d 171, 173 (Pa. 1952). Our Supreme Court interpreted the "missing witness rule" to be inapplicable if the witness in question is equally available to both sides in the litigation. *Bentivoglio*, 288 A.2d at 748. "In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Allingham v. Workmen's Comp. Appeal Bd. (City of Pittsburgh)*, 659 A.2d 49, 53 (Pa. Cmwlth. 1995) (citing *Bentivoglio*, 288 A.2d at 748), *appeal denied*, 672 A.2d 310 (Pa. 1996).

Here, it does not appear that the WCJ drew any adverse inferences against Claimant for his failure to present the testimony of his co-workers or Dr. Grieco. While the WCJ noted that Claimant did not present medical testimony from Dr. Grieco in her factual findings, the WCJ did not use that factual finding in her reasoning. Similarly, the WCJ merely noted the fact that Claimant did not provide the testimony of his co-workers that were present during the "tree stand discussion," but again, did not use her finding as part of her analysis. Claimant has also not directed us to, nor can we find, any statement within the WCJ's decision that specifically indicates that the WCJ drew an adverse inference against Claimant when making her determination. For these reasons, we conclude that the WCJ did not misapply the "missing witness rule" or draw an impermissible, adverse inference against Claimant for failing to provide the testimony of Dr. Grieco or his co-workers.

16

Claimant finally contends that the WCJ's decision was not reasoned because the WCJ failed to find that Claimant's medical evidence was unequivocal and competent. More specifically, Claimant challenges the WCJ's credibility determinations regarding Dr. Lee's medical testimony and argues that the WCJ's analysis with respect to Dr. Lee's testimony is flawed because the WCJ does not understand what it means for medical testimony to be unequivocal. In response, Employer argues that an assessment of Dr. Lee's testimony reveals vague and contradictory opinions regarding the cause of Claimant's injury and, therefore, Dr. Lee's testimony is equivocal and not legally competent evidence.

Here, the WCJ found that there was insufficient medical evidence to unequivocally find that Claimant was injured as a result of work activities. (WCJ's Opinion at 28.) This finding appears to be entirely based upon the WCJ's determination that Claimant's testimony regarding the cause of his injuries was not credible. Dr. Lee admitted that his opinion regarding causation was based entirely on the history learned from Claimant. Once the WCJ found Claimant's testimony to be not credible, there is no factual basis to support Dr. Lee's testimony that Claimant's injuries were work-related. In fact, Claimant even acknowledges in his brief that the medical opinions regarding any work-related cause for his injuries assume that the history provided by Claimant was correct. (*See* Claimant's Br. at 23.) For these reasons, we conclude that the WCJ did not err by failing to find that Claimant's medical evidence was unequivocal and competent.

For the reasons set forth above, we conclude that the WCJ did not fail to issue a reasoned decision. Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard D. Hissam,               :
                    Petitioner    :
                                  :
          v.                      :     No. 1344 C.D. 2017
                                  :
Workers' Compensation Appeal Board :
(Chapman Business Properties),    :
                    Respondent    :

# **O R D E R**

AND NOW, this 22nd day of August, 2018, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge